## BRIGHAM et al. v. BRIGHAM.

Upon the application of the heirs at law, the lands of a deceased intestate were appraised and divided under the Civil Code, § 3480. By the judgment of the court the heir drawing a certain lot was required, before taking possession, to pay a named amount of money to the other heirs to make them equal. This heir was already in possession of the lot set apart to him, and was allowed to remain in possession upon giving notes to the others for this amount, secured by mortgage upon his lot. Subsequently he died, leaving the notes unpaid. His widow applied for a year's support, and all of the lot was set apart to her ; whereupon the mortgagees filed a caveat to the return of the appraisers setting aside the year's support. *Held*, that the mortgage, having been given upon the whole lot for the purchase-money of an undivided interest in it, was a purchase-money mortgage ; and that the right of the widow to a year's support in the lot was inferior to the lien of the mortgage and to the caveators' lien for owelty of partition.

Argued June 10, — Decided July 18, 1901.

Year's support — appeal. Before Judge Henry. Burke superior court. July 30, 1900.

*Johnston & Fullbright,* for plaintiffs in error.

*S. H. Jones* and *Lawson & Scales,* contra.

SIMMONS, C. J.   The record discloses that William Brigham died intestate, leaving a large quantity of land and nine children.   The children applied to the court of ordinary, under the Civil Code, § 3479 et seq., to have the land divided in kind.   Appraisers were appointed who divided the land into nine shares and estimated the value of all of the land and of each of the shares.   The appraised values of the shares were not equal, and the appraisers recommended that the heirs who drew the more valuable shares should pay designated sums of money to the others in order to equalize them.   There appear to have been no objections to this report, which was made the judgment of the court of ordinary in February, 1894.   T. R. Brigham drew the most valuable share.   In order to equalize the heirs it was recommended by the appraisers and adjudged by the court that he should pay to the others $453.56.   It appears from the record that he was already in possession of the lot which he drew.   The other heirs who drew lots worth more than their distributive shares paid the amounts adjudged against them.   In the distribution of the sums thus paid, some of those drawing small shares were, by the consent of all the parties, including T. R. Brigham, paid up in full, while the others who had drawn small shares were assigned the money to be paid by T. R. Brigham.   The latter, in June, 1894, agreeing to this arrangement but being unable to pay the amount assessed against him, made and executed his notes, secured by mortgage upon the whole of the lot drawn by him, to cover this amount.   The notes and mortgage also included some $77 for certain personal property he had purchased at the administrator's sale, but at the time of the execution of the notes and mortgage he paid on the notes $156, which was credited on the notes the day they were executed, the agreement being that the money thus paid should go first to discharge the debt for the personal property.   In 1898 T. R. Brigham died, and his widow applied for a year's support for herself and her minor children.   The appraisers set apart as a year's support all of the land drawn by T. R. Brigham as his share of the estate of his father, and also all of his personal property.   To the return of the appraisers a caveat was filed by the brothers and sisters who held the notes and mortgage above mentioned.   From the judgment of

the court of ordinary an appeal was taken to the superior court. On the trial of the appeal the jury found a verdict sustaining and setting up the return of the appraisers. The caveators made a motion for a new trial, which was overruled by the court. The movants excepted.

1. One of the grounds of the motion complained that the trial judge erred in charging the jury that "the caveators have no lien of owelty upon the land in question, for any amount, superior to the applicant's right to year's support;" and that "the mortgage held by the caveators upon the land is not superior to the applicant's right of year's support in the land. You have therefore nothing to do with these questions, and your investigation is restricted solely to the issue as to whether or not the amount and value of the property set apart by the appraisers is excessive." The question thus made is controlling in the case. The equitable doctrine of owelty is fully recognized in our Civil Code, § 3480. This doctrine is applied in partitions between heirs at law of an intestate or other tenants in common, and means that where one of the heirs or tenants in common receives, in a division in kind of the lands of the estate, a share more valuable than his due portion of the estate, he should pay a certain ascertained sum to the others in order to equalize the distribution. In some States the lien of owelty is enforced in equity courts only, while in others, as in Georgia, the legislature has made provision for it. In this State it can be enforced upon the application of any of the distributees or of the administrator in the court of ordinary. The doctrine is purely equitable, and the lien can not be enforced in courts of law except by statute. The principle established is so just that courts of equity began at an early day to enforce the lien. It has always been held by these courts that this lien for owelty is superior to almost every other lien. In one case it was held that where one of the heirs of an intestate gave a mortgage upon his undivided interest in the estate, and subsequently he drew a share charged with owelty, the lien for owelty established by the court in favor of the coheirs was superior to the lien of the mortgage. This lien for owelty should be superior to all other liens imposed by the distributee, for, in this State, land descends to the heirs and each of them owns an equal interest in it; and when by a partition, either in equity or under the statute, a decree or judgment is rendered dividing the

lands so that one of the heirs gets more than his proper share, the others must be paid for the surplus in value before the title passes to the heir drawing such valuable share. In the present case the judgment of the court of ordinary appears to have made provision for this very thing. The return of the appraisers, which was made the judgment of the court, declared that T. R. Brigham should pay the sum of $453.56 before the delivery of the land to him. Thus the payment of this amount seems to have been made a condition precedent to his obtaining possession of the land. He was unable to pay the amount charged against his portion of the land, and four of the other heirs, who had drawn smaller shares, were willing to wait upon him for the money. The remaining heirs who had drawn small shares were unwilling to postpone the payment of the amounts due them. All of the parties therefore entered into the agreement set forth above, by which some of the heirs were fully equalized by payment of the money paid in by others who had drawn large shares, while the caveators agreed to look to T. R. Brigham, taking from him his notes and mortgage for the amount assessed against his share. The mortgage thus given was for the same debt or claim and, under the facts recited, between the same parties as the lien for owelty of partition. The lien of owelty or equalization was for the purchase-money of that portion of the lot drawn by T. R. Brigham which was in excess of the share to which he would have been entitled upon an exactly equal division. Had the heirs proceeded to enforce this lien for owelty, it might be said that it extended only to the part which he acquired by purchase, and not to that to which he acquired title by descent. As far as our research has extended, the better opinion is that the lien attached to the whole of the tract or purpart, the portion acquired by purchase being an undivided interest in all parts of the whole. However this may be, when T. R. Brigham gave a mortgage upon the entire tract, including the interests acquired by purchase and by descent, the mortgage lien certainly attached to the whole. It was argued that we have another statute which makes the claim for year's support superior to all debts; that this debt is simply a claim in the nature of a vendor's lien, and is not superior to the claim for year's support. In reply it may be said that Civil Code, § 3472, declares, in substance, that where land is sold and the vendor makes a deed and takes a mortgage for the purchase-money,

this mortgage lien shall be superior to the claim for year's support. The facts of the present case bring the lien of the caveators' mortgage within the principle of that section.   It may not be strictly within its letter, for in this case there was no deed made by the caveators to T. R. Brigham ; but in such a case no deed is necessary.   Had the tenants in common themselves divided the land and sold it to each other, no deeds would have been necessary.   Releases would have sufficed.   In the present case the action of the parties amounted to releases to each other, if not indeed to the giving of deeds.   They applied to the court for a division of the lands, the lands were divided by a judgment of the court, and the parties entered into the agreement hereinbefore recited.   Had T. R. Brigham taken a deed from the other heirs, or obtained a release from them, and given his notes and mortgage for their interests in the land, could he have said that the notes did not represent the purchase-money of a part of the land ?   Clearly not.   If he could not set up such a defense, his widow, standing in his shoes, can not do so under the section of the code last alluded to.   It is clear that the note and mortgage represented the purchase-money of that part of the land he drew which was in excess of the value of his proportionate part.   To hold that, before section 3472 of the Civil Code can apply, there must be a bargain and sale and a deed and a mortgage back, would be sticking in the bark.   Our constitution provides that homesteads and exemptions shall be exempt from levy and sale, except for purchase-money, improvements, etc. This court has several times held that where a factor sells to the head of a family fertilizers or supplies which enter into the making of his crops, the claim is in the nature of a purchase-money debt and the crop is subject.   *Stephens* v. *Smith,* 62 *Ga.* 177·; *Cook* v. *Roberts,* 69 *Ga.* 742.   If these things are in the nature of purchase-money, how much stronger is the case made where an heir obtained land worth $453 more than his share of the estate, where the court adjudged that he was not to go into possession as owner of the land until he had paid the money, where he recognized the claim as a purchase-money debt in a mortgage given upon the lot, and where such mortgage described the lot as the land he had drawn in the distribution of his deceased father's estate ! The case is, we think, within the spirit and principle, if not within the letter, of section 3472 of the Civil Code.   And "if the debt   .   .

was for any part of the purchase-money of all the land, . . then all the land is subject until the whole debt is paid." *Cook* v. *Cook*, 67 *Ga.* 381. To hold that this widow can, by application for a year's support, get not only her husband's estate but the interest of his brothers and sisters in the identical land would be contrary to all principles of justice and equity.

The other questions made in the record are such as will probably not arise upon the next trial, and it is therefore unnecessary to decide them.

*Judgment reversed. All the Justices concurring.*