734

PHŒNIX MUTUAL LIFE INSURANCE COMPANY *v.*
BANK OF KESTLER.

No. 7519.   JUNE 16, 1930.   REHEARING DENIED JULY 31, 1930.

*R. L. Williams Jr.,* for plaintiff in error.   *A. H. Gray,* contra.

HINES, J.   On April 14, 1921, Keaton borrowed from the Phœnix Mutual Life Insurance Company the sum of $20,000, and to secure the same executed to that company his deed to various land lots and portions of land lots in the 6th district of Early County, containing in the aggregate 2,887-1/2 acres. This indebtedness fell due on October 1, 1925, but was extended by the lender for five years from that date, the lender retaining its original security deed to secure the payment of the debt.   In 1923 Keaton returned for taxation, in Early County, 4553 acres of land at the valuation of $32,880, city real estate at the valuation of $2,500, and personalty at the valuation of $13,995.   This return covered the lands embraced in the above security deed from Keaton to the insurance company.   Keaton defaulted in the payment of his indebtedness to the insurance company.   The company brought suit thereon, recovered judgment against Keaton sometime in 1929,

and, after reconveyance of the property to Keaton for levy and sale, had the execution issued on said judgment levied, and said lands were sold by the sheriff on the first Tuesday in June, 1929, when the insurance company became the purchaser thereof, the lands not bringing enough to discharge its judgment. On February 5, 1923, Keaton conveyed to the Bank of Kestler land lots 216 and 217, the north half of land lot 212, and 57 acres in the northwest corner of land lot 213, aggregating 682 acres, to secure an indebtedness of $6,440. This land was sold under a power of sale in said security deed on June 13, 1925, when Mrs. H. E. Hightower purchased the same for $4,000. Mrs. Hightower was the wife of H. E. Hightower, who was at all times named herein president of said bank. On July 13, 1925, Mrs. Hightower conveyed this land to the Bank of Kestler to secure an indebtedness of $6,440. This debt was paid, and the deed was canceled on July 30, 1928. On June 15, 1923, Keaton conveyed to said bank, to secure an indebtedness of $2,500, 50 acres of land lot 266, and 100 acres of land lot 256. On September 1, 1923, this deed and the lands thereby conveyed were transferred to Mrs. Hightower; and the lands therein conveyed were regularly sold, under the power of sale, to Mrs. Hightower for $1,000. On January 29, 1925, Keaton conveyed to said bank, to secure an indebtedness of $3,282.24, 50 acres of land in the town of Damascus, all of his town lots in said town, and 12 acres in land lot 255 near said town. These lands were regularly sold, under a power of sale, to the bank on January 2, 1926, which became the purchaser thereof for $2,500. It was admitted by the parties that these lands were worth the sum of $2500 on the date last named. On March 1, 1928, the bank conveyed these lands by warranty deed to the widow of Keaton, for $4,111.26. At the time this security deed was executed, at the time the lands therein embraced were sold, and at the time of the sale thereof by the bank to Mrs. Keaton, the bank was in possession and control of the tax fi. fa. to which reference will be hereinafter made. On January 1, 1922, Keaton conveyed to Hightower the west 200 acres of land lot 237, to secure a debt of $5,597. Under a power of sale in this conveyance this land was sold, on July 13, 1923, to H. E. Hightower for $1,000. On April 8, 1926, Hightower conveyed this land, with other property, to the above bank to secure an indebtedness of $2,900.23.

Keaton did not pay the taxes due upon his property returned by him for taxation for the year 1923. On December 20, 1923, a tax fi. fa. was issued against him by the tax-collector, for the taxes due upon his property so returned. This fi. fa. was properly transferred to the Bank of Kestler on September 7, 1924, and the same was entered on the general execution docket on Sptember 12, 1924. Keaton died intestate on December 27, 1927. His widow was appointed administratrix of his estate on February 6, 1928. His estate was insolvent. All of his estate other than his equity in the lands embraced in his security deed to the insurance company were set apart as a year's support for his widow and minor children. This tax fi. fa. was levied upon certain of the lands embraced in the security deed from Keaton to the insurance company. The latter, after having offered to pay the taxes due upon the land embraced in its security deed, which was refused by the bank, filed its claim to the lands levied upon under the tax fi. fa. In aid of its claim the claimant filed an equitable amendment in which it set up the facts hereinbefore set out. The lands embraced in the security deeds hereinbefore referred to were included in the tax return made by Keaton in 1923. Upon the trial, the facts above stated appearing, the court directed a verdict finding the property levied upon subject to the tax fi. fa., and judgment was entered accordingly. To this ruling the claimant excepted upon the grounds (a) that under the law and the evidence the property levied upon was not subject to the lien of the tax fi. fa., and that in no event should the property levied upon, to which it held a sheriff's deed, be held liable for more than the actual taxes due thereon; (b) that the principle set out in section 6029 of the Civil Code did not apply where there was a security deed antedating the tax return and the fi. fa., and where the subsequent absolute title was acquired by foreclosure instead of by a voluntary conveyance of bargain and sale, and that certainly this code section would not require it to pay taxes upon other property in which it had no interest; (c) that under the transactions set out in the equitable amendment, which were admitted to be true by the plaintiff, a finding was demanded that the plaintiff could and should have collected its tax fi. fa. during the lifetime of Keaton out of other property than that embraced in claimant's security deed; (d) that the bank should have applied to the payment of the tax fi. fa. a sufficiency of the funds derived

from the sales of the property of the taxpayer under the powers of sale included in the deeds to secure debt held by it from the taxpayer, the sales under power having been made during the time the bank held the tax fi. fa. as transferee; and (e) that the lien of the tax fi. fa. had been released as to the lands claimed by the insurance company, by reason of the fact that the bank had taken a deed to secure debt from the taxpayer to certain property, had sold the same under a power of sale contained therein, had bid the same in for itself at said sale, and had later executed a warranty deed to the property to the widow of the taxpayer, during all of which times the bank held the tax fi. fa. as transferee; claimant contending that these transactions released from the lien of the tax fi. fa. the property sold by the bank to the widow of Keaton, and that a release of this property operated as a release of claimant's property from the lien of the tax fi. fa.

■ The first question with which we shall deal is whether the principle found in section 6029 of the Civil Code is applicable under the facts of this transaction. It is insisted by counsel for the claimant that the principle announced in this section is not applicable where there was a security deed antedating the tax return and fi. fa., and where the subsequent absolute title was acquired by foreclosure instead of by a voluntary conveyance of bargain and sale, and that certainly under this principle the claimant would not be required to pay taxes on other property in which it had no interest. To state more clearly the question involved in this case: If the owner of different tracts of land conveyed some of them to a company to secure a debt at a time when there were no liens on his lands, and if thereafter he conveyed other parcels of his lands to a bank to secure indebtedness, with powers of sale in the conveyances, after he had permitted a tax lien to attach on all his property, including all the lands so conveyed as security, and if the bank, after having taken a transfer of the tax fi. fa., exercised the powers of sale contained in its security deeds, and at the sales purchased the lands embraced in its security deeds, thus divesting the owner of his equity of redemption in the lands conveyed as security, and if thereafter the company first mentioned reduced its debt to judgment, and at execution sale purchased the lands embraced in its security deed, thus divesting the owner of his equity of redemption in these lands, is the insurance company liable for any

of this tax under the facts of this case; and if so, is it liable for all of it, or only ratably for its proportion of the whole amount of the taxes? How do the decisions of this court stand upon this subject? Where two creditors of a common debtor, who is insolvent, have each, relatively to the other, the highest lien upon a distinct parcel of real estate belonging to such debtor, and there are outstanding against the latter tax executions issued generally against him in personam and binding both parcels of the realty, the burden of discharging the liens of these executions should, as a general rule, upon equitable principles, be apportioned between the two lien creditors by making each of the two pieces of property liable ratably for its proportion of the whole amount of the taxes, according to the respective valuations at which the property was assessed and returned for taxation. *Brooks* v. *Matledge,* 100 *Ga.* 367 (28 S. E. 119). This is the rule when the contest is between liens. But the rule is different when the contest is between purchasers of separate and distinct properties upon which there is a lien binding both, at the time the first purchaser or the holder of a security deed takes. In such a case section 6029 of the Civil Code applies; and the last property sold is primarily bound for the payment of all taxes due on the whole.

In *Merchants National Bank of Rome* v. *McWilliams,* 107 *Ga.* 532 (33 S. E. 860), this court decided that "When property is sold and conveyed by a common grantor at different times and to different purchasers, and taxes having a lien on all the property sold are due, the last property sold is primarily bound for the payment of all such taxes." It was further held that the sale by the sheriff of property under the foreclosure of a mortgage is in law to be treated as a sale by the owner, and that when such sale was of the last parcel of property sold, the owner being insolvent, that parcel of property is chargeable with the payment of all taxes due by the owner to the state and county at the time of the sale. In *Reynolds* v. *Wood,* 111 *Ga.* 854 (36 S. E. 593), this question came before this court again for decision. From the record in this case of file in the clerk's office of this court the following facts appear: Ellison made a deed to the Building & Loan Association of Rome to lot 50 in the City of Rome, in October, 1890, to secure a loan of $1200 due by Ellison to said association. Said association by deed conveyed its interest in said property in 1892 to one Moultrie. In

1892 Moultrie conveyed the same interest to Reynolds. In June, 1896, Reynolds obtained judgment in the name of said association against Ellison for the principal sum of $1401.06, with interest, to secure which Ellison made his deed to the association in October, 1890. In October, 1896, Reynolds made and filed a deed, which was recorded before levy, conveying said property to Ellison for the purpose of levy and sale. Said lot was sold at sheriff's sale under said judgment and fi. fa., on the first Tuesday in October, 1896, and the sheriff made a deed thereto to Reynolds for $1250, the property not bringing enough to pay Reynolds's fi. fa. In August, 1896, tax fi. fas. against Ellison had been levied upon said lot. Reynolds purchased said fi. fas., paying the amount due on each, took a transfer of them to himself, and had them levied on the property claimed by Wood. In July, 1894, Ellison executed to Wood a mortgage on said property, which was foreclosed, and the property was sold under said mortgage fi. fa. for $446. In September, 1896, the sheriff executed a deed to Wood. Tax executions for 1892, 1894, and 1895 were then outstanding against Ellison. On July 8, 1896, they were levied upon the property of Ellison, to which Reynolds held title as above; whereupon Reynolds purchased said fi. fas., and on November 6, 1896, had them levied upon the land which Wood bought at sheriff's sale in September, 1896. Wood filed a claim to this land. The property first levied on under said tax executions and so bought in by Reynolds was more than sufficient to pay said taxes, the larger part of such taxes being taxes on this particular property. Ellison was insolvent, and these taxes could not be collected of him. The property claimed by Wood was worth $481, and that sold to Reynolds was worth $1250. The judge, before whom the issues in the case were tried, adjudged that the property first levied upon under said tax fi. fas., and bought by Reynolds, be first subjected to the payment of said taxes; that the property claimed by Wood be adjudged not subject; and that in the event the former was not sufficient to pay the taxes, the claimant's property be chargeable only with its proportionate part of said taxes, with interest thereon. To this judgment Reynolds excepted; and this court held that the case was controlled by the rule laid down in *Brooks* v. *Matledge,* and was distinguishable from *Merchants National Bank of Rome* v. *McWilliams,* supra, for the reason that in the latter case the tax liens were in existence before the party

owing the taxes had made the first conveyance of his property, while in the former, as in the case sub judice, the tax liens arose after the tax debtor had executed a security deed conveying one of the parcels of realty involved.

Counsel for the bank rely upon *Askew* v. *Scottish American Mortgage Co.,* 114 *Ga.* 300 (40 S. E. 256). In that case there were two security deeds at different dates to different grantees. The maker of these two deeds owned 1400 acres of land. In 1890 he executed to the mortgage company a deed absolute on its face, to two tracts of these lands aggregating 400 acres, but in fact this deed was made to secure a debt. In 1895 the owner, to secure a loan, executed to Askew and Lane a deed to the remainder of his lands. The owner remained in possession of the lands embraced in both of these deeds. In 1896 the taxes due on these lands were assessed against the owner, and a tax execution was issued against him therefor. This execution was levied on one of the tracts which had been conveyed by the owner to the mortgage company, and the same was sold for the purpose of collecting the amount due as taxes on the entire 1400 acres. In August, 1896, the owner relinquished to Askew and Lane all right, title, and interest which he had in and to the 1000 acres conveyed to them as security, together with possession thereof. Subsequently the owner relinquished all his claim to the mortgage company to the land conveyed to it as security, on the ground that the land was not worth as much as the amount of the debt to secure which it had been given. At the time when one of the tracts conveyed to the mortgage company was sold for the payment of these taxes the owner was insolvent, and had been so ever since. On this state of facts the trial judge rendered a judgment prorating these taxes between the mortgage company and Askew and Lane. This court held that under the principle announced in section 6029 of the Civil Code (then section 5424) the land thus acquired by the mortgage company was subject to the payment of all the taxes, and reversed the judgment below. This conclusion was reached upon the theory that the rule laid down in the above section of our Civil Code was not applicable to security deeds which operate only as liens to secure the payment of debts due the grantees therein. Applying this principle, this court held that where the owner relinquished all his right, claim, and title under the junior security deed to the grantees

therein, and afterwards likewise relinquished all his claim, right, and title to the lands embraced in the senior security deed, the latter lands were subject to the payment of the taxes due on all of the lands embraced in the two security deeds, when the owner of the lands was insolvent. The facts in that case and those in the case now under consideration are very much alike. The only difference is that in that case the grantees in the security deeds afterwards acquired from the grantor relinquishments of all right, title, or interest which the grantor had in the respective lands embraced in the two deeds. In the present case there were no such relinquishments. The bank acquired an absolute title to its property by the exercise of the power of sale embraced in its security deeds. The insurance company acquired absolute title to the property owned by it by reconveyance of the land embraced in the security deed to the grantor, and by having the land therein sold at sheriff's sale and by buying the same in.

It was urged by counsel for the bank that there is no legal distinction between a deed executed by a grantor in person and a deed executed by his attorney in fact under a power of sale upon compliance with its terms. There is force in this view. In *Merchants National Bank of Rome* v. *McWilliams,* supra, it was stated that the sale by the sheriff under the foreclosure of a mortgage is in law to be treated as a sale by the mortgagor. Under like reasoning the sale under power of sale in a security deed by the grantee is in effect a conveyance by the grantor in such deed. There is not perhaps sufficient difference in this respect to differentiate the *Askew* case from the present case. In the *Askew* case, however, this court based its decision upon the ruling in the *McWilliams* case; but in so doing, and while admonishing us twice to see the case of *Reynolds* v. *Wood,* supra, made no further reference to that case and overlooked the distinction drawn by this court between the *Reynolds* case and the *McWilliams* case. We have set out above the pertinent facts of the case of *Reynolds* v. *Wood.* On a perusal of these facts it will appear that Reynolds claimed title under a security deed and a subsequent sheriff's deed, while Wood claimed under a senior sheriff's deed. It is likewise true that Reynolds reduced his debt secured by the security deed to judgment, reconveying the property for the purpose of levy and sale, and had the same sold under the levy of the execution on this judgment, but

this was done subsequently to the title acquired by Wood at the sheriff's sale of the land claimed by him, and which was levied on to satisfy these tax fi. fas. Reynolds did not acquire the equity of redemption of the taxpayer in the lands embraced in his security deed until he had the same sold under the judgment obtained upon the debt thereby secured, and after Wood acquired his title under the sheriff's sale. This court held that the case of *Reynolds* v. *Wood* was controlled by the rule laid down in *Brooks* v. *Malledge,* supra, and distinguished the former case from the *McWilliams* case, for the reason that in the latter the tax liens were in existence before the party owing the taxes had made the first conveyance of property, while in the former case, as in *Reynolds* v. *Wood,* the tax liens arose after the tax debtor had executed a security deed convying one of the parcels of realty involved. In the case we have under consideration the tax lien arose after the tax debtor had executed a security deed to the insurance company to one of the parcels of realty involved. So we do not see how the present case can be differentiated from the case of *Reynolds* v. *Wood.* The judgment in that case was by a full bench, and is of older date than the judgment in the *Askew* case. It must be followed in preference to the ruling made in the *Askew* case, if there is conflict between them. We more readily follow the ruling in *Reynolds* v. *Wood,* for the reason that the rule laid down in the *Askew case* would operate harshly in the present case. *Merchants National Bank of Rome* v. *McWilliams,* supra. In all cases where a security deed is taken before the tax lien attaches, the rule laid down in the *Askew* case would operate to impair the security, and in some cases the effect might be to entirely destroy the security. Besides, in the *Askew* case this court did not refer to a provision of our statute which creates security deeds (Civil Code of 1910, § 3306), and which declares that such deeds shall be held by the courts of this State to be absolute conveyances, with the right reserved by the vendor to have the property reconveyed to him upon payment of the debt or debts to be secured, and not a mortgage or lien. Furthermore, this court has lately, in a decision by a full bench, applied the rule laid down in *Brooks* v. *Malledge.* In *Harry L. Winter Inc.* v. *First National Bank of Quitman,,* 164 *Ga.* 364 (138 S. E. 794), the precise question now before this court was then before it. The competition was between an older and a younger

security deed. The holder of the junior security deed had reduced his debt to judgment, subjecting thereto the property embraced in his junior security deed, and on the sale buying in this property, thereby obtaining a sheriff's deed thereto prior to the issuing of the tax fi. fa., thus becoming the first purchaser of the property; and this court held that the fact that the holder of the older security deed had not sued on his debt to judgment did "not affect the equity which requires the division of the tax burden ratably between them."

■ We can not agree with counsel for the insurance company that his client is not liable for any of this tax, but are of the opinion that the amount due on the tax fi. fa. for 1923 should be prorated between the insurance company and the bank in the proportion which the value of the lands embraced in the security deeds executed by Keaton to the bank, dated respectively February 5, 1922, June 15, 1923, July 13, 1925, and January 29, 1925, bears to the value of the lands embraced in the security deed from Keaton to the insurance company.

■ We can not agree with counsel for the insurance company that the lien of this tax fi. fa. upon the lands claimed by that company has been wholly released by reason of the fact that the bank had taken a security deed from the taxpayer to certain property, had sold the same under a power of sale in that deed, at which sale the bank bid in the property, and had conveyed the same by a warranty deed to the widow of the taxpayer, during which time the bank held the tax fi. fa. as transferee. While the bank could not afterwards enforce the tax fi. fa. against the land so conveyed to the widow, the transaction did not amount to a total release of all the property subject to the tax fi. fa. It could still be enforced against the insurance company for its ratable part of these taxes.

■ The other assignments of error are without merit.

*Judgment reversed. All the Justices concur.*