FEDERAL LAND BANK OF COLUMBIA *v.* FARMERS AND
MERCHANTS BANK *et al.*

No. 9348. August 10, 1933.

*N. F. Culpepper* and *R. M. Sasnett Jr.,* for plaintiff.

*W. J. Estes* and *Stanford Arnold,* for defendant.

Bell, J.  In October, 1925, W. J. Estes, a resident of Coweta
County, obtained a loan of $7000 from Federal Land Bank of
Columbia, and secured the same by a deed to 624 acres of land in
Meriwether County.  At this time there was an outstanding se-
curity deed in favor of another person to 115 acres of the land, and
the bank lost its security as to this part of the tract.  The in-

debtedness to the bank was not paid at maturity, and the remaining portion of the land, 509 acres, was sold by the bank under a power of sale contained in its security deed. This sale occurred on November 5, 1929. The bank became the purchaser for the sum of $5000, which was about $2000 less than the amount due upon the loan to Estes. In the year 1929 Estes returned the entire tract of 624 acres for taxation in Meriwether County, at a valuation of $4370. On January 1, 1929, Estes was the owner of five head of mules, which were used and kept by him on the farm in Meriwether County. These mules were not returned for taxation either in Coweta or in Meriwether County for the year 1929, and they were not assessed for taxation in either county. On April 1, 1927, Estes executed a bill of sale to Farmers and Merchants Bank of Senoia, conveying the title to these mules to secure an indebtedness of $1325. On April 6, 1929, Estes executed a bill of sale to C. P. Daniel's Sons, conveying title to all the crops on lands owned or controlled by him "in the upper 9th district of Meriwether County," to secure a note of even date for $1000. On July 22, 1929, a second bill of sale to the crops was made between the same parties, to secure notes of the same date for $150 and $350 respectively. In each of the bills of sale made to Daniel's Sons was a recital that the indebtedness secured thereby represented money and advances made to Estes to enable him to "plant, cultivate, and harvest the crops" grown by him.

In December, 1929, an execution was issued by the tax-collector of Meriwether County for State and county taxes due in that county for the year 1929. The land bank paid the full amount of this execution, and it was duly transferred to the land bank by the sheriff. The execution and the transfer were properly recorded in Meriwether County within the time prescribed by law, but were never recorded in Coweta County, in which Estes resided. The execution represented the tax due upon the entire tract of land conveyed as security to the land bank, including the 115 acres the title to which failed as to the land bank. The execution did not include taxes upon any other property. The land bank as transferee caused the execution to be levied on the five mules described in the bill of sale to Farmers and Merchants Bank, and upon 350 bushels of corn and 3000 bundles of fodder. Farmers and Merchants Bank filed a claim to the mules, and Daniel's Sons filed a claim to the corn and

fodder. Before trial Farmers and Merchants Bank filed an equitable amendment in which it was alleged that the payment of the taxes by the land bank was in extinguishment of the tax lien, and that this bank as transferee had no legal or equitable right to collect the taxes from the property of this claimant. The amendment further alleged that the taxes should be apportioned among the two banks and Daniel's Sons as creditors, according to the respective valuations "at which the properties were assessed and returned for taxation." Daniel's Sons was made a party, and thereafter adopted the allegations and prayers contained in the amendment of the other claimant. The court on the trial directed a verdict in favor of the claimants, finding the property not subject to the tax execution. The Federal Land Bank excepted to the overruling of its motion for a new trial.

The facts stated above were established without dispute by the pleadings and the evidence; and the following additional facts were developed by the evidence. The indebtedness of Estes to Farmers and Merchants Bank was unpaid at the time of the levy of the tax execution. The indebtedness to Daniel's Sons had been reduced by the proceeds of other crops grown by Estes upon this farm and sold prior to levy. The entire tract of land originally conveyed to the land bank was situated partly in the "upper 9th district" and partly in the tenth district of Meriwether County, and the same was true of the 509 acres which were sold and bought in by the land bank under its power of sale. The bills of sale executed to Daniel's Sons, while describing the crops as located in the "upper 9th district," were actually intended by the parties to cover all crops grown and cultivated upon any of the lands used by Estes during the year 1929, the evidence authorizing the inference that the parties acted upon the mistaken belief that all of the lands were located in that district. A portion of the corn and fodder claimed by Daniel's Sons was produced in each district. The evidence showed that, in accordance with the recitals in the bills of sale, the indebtedness secured thereby represented money and advances furnished by the claimant to enable Estes to produce the crops in each district, including the corn and fodder to which the claim was asserted. The prior credits upon the indebtedness in favor of Daniel's Sons amounted to several hundred dollars, and were derived from crops which in like manner were produced partly in each district,

There was no sufficient evidence as to the value of the properties claimed respectively by Farmers and Merchants Bank and Daniel's Sons, and there was no offer by either of these parties to do equity in the premises. Estes, the common debtor, is insolvent, and there is no other property from which the taxes may be paid.

■ The court erred in directing the verdict in favor of the claimants. Under the facts of this case the court should have applied the rule stated in *Brooks* v. *Matledge,* 100 *Ga.* 367 (28 S. E. 119), as follows: "Where two creditors of a common debtor, who is insolvent, each has, relatively to the other, the highest lien upon a distinct parcel of real estate belonging to such debtor, and there are outstanding against the latter tax executions issued generally against him in personam and binding both parcels of the realty, the burden of discharging the liens of these executions should, as a general rule, upon equitable principles, be apportioned between the two lien creditors by making each of the two pieces of property liable ratably for its proportion of the whole amount of the taxes according to the respective valuations at which the property was assessed and returned for taxation." The claimants were not entitled to a verdict which absolutely relieved the properties claimed by them respectively from any part of the taxes. The burden should have been apportioned ratably to the properties in which the several contending parties were interested. While this ruling will reverse the judgment of the trial court, it will not sustain the whole contention of the plaintiff in error, the land bank.

It is insisted that, because the plaintiff in error sold and bought in the land under the power of sale, the property which thereafter remained in the hands of the debtor should be charged with the tax lien. To sustain this contention the plaintiff in error invokes the principle stated in the Civil Code, § 6029; but in our opinion that principle is not applicable under the facts of the present record. The decisions in *Merchants National Bank* v. *McWilliams,* 107 *Ga.* 532 (33 S. E. 860), and *Askew* v. *Scottish American Mortgage Co.,* 114 *Ga.* 300 (40 S. E. 256), relied on by counsel for the plaintiff in error, were considered and explained in *Phœnix Mutual Life Ins. Co.* v. *Bank of Kestler,* 170 *Ga.* 734 (154 S. E. 247), in which, on facts similar to those involved in the case at bar, this court applied the rule stated in the *Matledge* case. The distinction between the two classes of cases was clearly stated by Mr. Justice Gilbert

in his dissenting opinion, concurred in by Mr. Justice Atkinson, in *Powell* v. *Federal Land Bank,* 175 *Ga.* 732, 738 (165 S. E. 817), as follows: "If the tax liens accrued before the security deeds were executed, the principles stated in the Civil Code (1910), § 6029, are applicable. On the other hand, if the tax lien accrued after the security deeds were executed, the taxes are prorated, as held by the trial court in the present case." What was there said as to the relative date of a security deed would apply as well to a bill of sale or mortgage. In that case the Justices did not differ as to principles, but merely disagreed on their application. Compare *Harry L. Winter Inc.* v. *First National Bank,* 164 *Ga.* 364 (138 S. E. 794); *Federal Land Bank* v. *DeLoach,* 172 *Ga.* 281 (157 S. E. 477); *Decatur County Building & Loan Asso.* v. *Thigpen,* 173 *Ga.* 363 (160 S. E. 387). On the question whether in a given case the court should apply the rule of apportionment or the inverse-order rule, the discussions in *Cumming* v. *Cumming,* 3 *Ga.* 460, and *Craigmiles* v. *Gamble,* 85 *Ga.* 439 (11 S. E. 838), are illuminating. It may also be observed that the two rules just referred to are based respectively upon the equitable principles of contribution and marshaling, and a recognition of the proper sphere and application of each of these distinct principles will relieve much of the difficulty in the solution of cases of this character. See, in this connection, Civil Code (1910), §§ 4588, 3220, 4609, 4598, 4599; 13 C. J. 820; 38 C. J. 1364; 34 C. J. 619, § 943; 41 C. J. 764-767, §§ 847-853; Newby *v.* Norton, 90 Kan. 317 (133 Pac. 890, 47 L. R. A. (N. S.) 302); Vines *v.* Wilcutt, 212 Ala. 150 (102 So. 29, 35 A. L. R. 1301); Asylum of St. Vincent de Paul *v.* McGuire, 239 N. Y. 375 (146 N. E. 632, 38 A. L. R. 1214); Wait *v.* Pierce, 191 Wis. 202 (209 N. W. 475, 48 A. L. R. 276). The fact that some of the property subject to taxation was not returned or assessed would make it necessary to submit independent proof as to the value of such property in arriving at a proper basis for an apportionment.

■ But it is contended in behalf of the claimants that the failure of the land bank, the transferee, to record the tax execution in the County of Coweta, in which the tax debtor resided, operated to nullify the lien. This contention would seem to be supported by the decision in *National Bank of Athens* v. *Danforth,* 80 *Ga.* 55 (4) (7 S. E. 546), but the ruling there made was tentative only, and in the case of *Thompson* v. *Adams,* 157 *Ga.* 42 (120 S. E. 529), it was

held, that by a failure to record, "the transferee shall lose his or her lien only upon property which has been transferred bona fide and for a valuable consideration before the record and without notice of the existence of such execution." According to the decision in the *Thompson* case, record is necessary to preserve the lien only as to those who may have purchased the property bona fide subsequently to the transfer.

The claimants further contend that since the tax execution represented the taxes upon the land only, it should not be enforced against the personal property which was not returned for taxation and is yet subject to assessment and taxation either in Meriwether County or in Coweta County, as the case may be. There is no merit in this contention. "Taxes shall be paid before any other debt, lien, or claim whatsoever, and the property returned or held at the time of giving in, or after, is always subject." Civil Code (1910), § 1140. "Liens for taxes due the State or any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid." Civil Code (1910), § 3333. "If there is not sufficient property in the county where the taxpayer resides to satisfy the taxes, property situated in any other county is the subject of levy and sale." Civil Code (1910), § 1174. While the tax execution involved in the present case represented the taxes due only upon the lands which were situated in Meriwether County, the lien extended to all of the property of the taxpayer wherever located within the State of Georgia, and such lien was superior to the claim of each of the parties. So the personal property of the debtor could be levied on and sold for taxes assessed against land only. See, in this connection, *Winn v. Bulls,* 127 *Ga.* 385 (3) (56 S. E. 406); *Decatur County Building & Loan Asso.* v. *Thigpen,* supra.

This conclusion is not in conflict with the statement in *National Bank of Athens* v. *Danforth,* supra, to the effect that "taxes on the mortgaged premises, properly paid by the mortgagee to protect his security, are charges upon the property as against the mortgagor, and all persons holding or claiming under him by lien or purchase subsequent to the date of the mortgage; but taxes not assessed on the specific property, though included in the same execution, and though paid by the mortgagee because so included, are not charges

except as against the defendant in execution." In that statement the court was dealing with the right of subrogation, without reference to the ownership of the tax fi. fa. by the party seeking to be subrogated. In the opinion it was said: "The payment of these taxes, without any reference to whether the bank got a title to the executions by transfer, is an equity, a claim upon this property in the nature of expenses incurred for the benefit of all concerned; and taxes to that extent attach to the mortgage, and are to be paid with the mortgage out of the proceeds of the property." The mere right of subrogation, without a transfer of the execution, applied only to taxes paid on the specific property against which such taxes were assessed. If any of the property involved in these claims should hereafter be assessed for taxation, the question of how the lien should be discharged, whether by apportionment as in the instant case or otherwise, will then become a matter for determination. The fact that property now claimed may be required to pay its own taxes at some time in the future is not a defense against the enforcement of the present execution. Seemingly such additional tax should be apportioned against all of the property, under the same principles that govern the present case.

■ The fact that the farm products included in the claim of Daniel's Sons were themselves exempt from taxation during the year 1929 (Ga. L. 1913, p. 122, Park's Code of 1914, § 998(a)) did not relieve such products from levy and sale for taxes accruing upon other property. In Scottish Union &c. Ins. Co. v. Bowland, 196 U. S. 611 (25 Sup. Ct. 345, 49 L. ed. 619), the United States Supreme Court said: "There is nothing in the exemption of government bonds from taxation which prevents them from being seized for taxes due upon unexempt property. We have held that the taxes were lawfully assessed. The statute authorizing a distraint gave the right to proceed against personal property within the jurisdiction of the State."

■ The security deed to the land bank and the bill of sale to Farmers and Merchants Bank each antedated the tax lien. If the crops were in existence when the bills of sale were executed to Daniel's Sons, the lien for the taxes had become a superior lien upon all of the debtor's property when this firm acquired its bills of sale. Whether or not these facts, without more, might have rendered this claimant subject to the inverse-order rule, as dis-

tinguished from the apportionment rule (compare *Brooks* v. *Matledge, Cumming* v. *Cumming,* and *Craigmiles* v. *Gamble,* supra), there are other facts and circumstances which must be considered. The evidence showed that this claimant furnished money and advances with which to make the crops now in controversy. It is a fair inference that unless credit for this purpose had been extended by some one, there would have been nothing, or but little, in the way of crops to share the burden of the taxes, and the lien therefor would have been cast upon the other creditors. In *Tift* v. *Newsom,* 44 *Ga.* 600, it was said that "money expended in the purchase of such provisions not only vests the title to the crop in the planter, but actually creates the crop. It may at least be said to be in the nature of purchase-money." See also *Stephens* v. *Smith,* 62 *Ga.* 178; *Cook* v. *Roberts,* 69 *Ga.* 742; *Brigham* v. *Brigham,* 113 *Ga.* 810, 814 (39 S. E. 309); *Moseman* v. *Comer,* 160 *Ga.* 106 (2) (127 S. E. 406).

All of the parties are in a court of equity, and must do equity; and even if the claim of Daniel's Sons should in law be confined strictly to the crops produced in the "upper 9th district," as stated in the bills of sale, it appears from the evidence that the money and advances furnished by this firm were used in the production of all of the crops grown by the debtor in Meriwether County, and it would be inequitable to saddle the whole burden of the taxes upon any portion of the crops produced by the substance of this creditor, to the relief and benefit of the other creditors. Such a disposition of the case would permit the other creditors to "reap where they had not sown and to gather where they had not strawed." In *Thomason* v. *Phillips,* 73 *Ga.* 140, it was held inequitable to allow minor children to hold land purchased by their mother, acting without authority as their guardian, when they refused to pay the balance of the purchase-money. In 21 C. J. 119, § 96, is the statement that, "besides enforcing liens created by express contract, equity, while disclaiming the power to create a lien in the absence of contract, has nevertheless protected equitable rights by impressing liens in the absence of express contract and contrary to the rules of law." *Thomason* v. *Phillips* is one of the cases cited to this text. The rule that supplies furnished for the production of crops have the nature of purchase-money, as announced in several of the early cases, has been held inapplicable in certain later cases

involving contests at law; and in *Watson* v. *Williams,* 110 *Ga.* 321 .(3) (35 S. E. 344), it was said that the rule would not be extended (and see *Gresham* v. *Loganville Banking Co.,* 32 *Ga. App.* 177, 122 S. E. 806) ; but the principle still exists to the extent that it may be applied in a court of equity where the facts will so authorize.

The apportionment of the taxes in this case should be applied to all of the crops produced by the money and advances furnished to the debtor by Daniel's Sons.   The portion of the crops not actually included in the bill of sale should not be made to pay the entire claim for taxes, to the exclusion of other property.   Nor should this or any other part of the crops be relieved of a ratable contribution to this claim.   Upon equitable principles, the apportionment of the taxes should include not only the crops which were levied on and claimed, but all other crops the proceeds of which were received and applied by Daniel's Sons toward the payment of its indebtedness.   Each of these three creditors should contribute ratably according to the value of the properties now held or claimed by . them respectively, or of which either has received the benefit since the tax lien accrued.

Nothing has been said by counsel for any party in this case as to whether the apportionment should include the 115 acres in Meriwether County, but as to which the title failed so far as the land bank was concerned.   To paraphrase a statement contained in the case of *Brooks* v. *Matledge,* supra, whatever might be the final equities in the case as to other persons who now hold real estate or other property formerly belonging to Estes upon which this tax fi. fa. is a lien, it is equitable and just that as respects the parties now before the court the burden of this lien should be discharged proportionately by them.

Under the decision in *Beaton* v. *Ware County,* 171 *Ga.* 798 (156 S. E. 672), the burden was upon the claimants to show the values of the respective properties, in order to obtain an apportionment.   It was also incumbent upon them to pay or offer to pay their proportion of the taxes, in order to maintain their case in equity.   Since counsel have not discussed these questions, we make no decision as to the time in relation to which the values of the several properties should be determined, or as to whether, in a case where only a part of the property has been returned or assessed for taxation,

such return or assessment should furnish the conclusive criterion as to this property.

For the reasons stated above, the court erred in directing the verdict in favor of the claimants.

*Judgment reversed. All the Justices concur, except Hill, J., absent because of illness.*