## McELMURRAY, administrator, v. BLODGETT.

1. Upon its merits this case is controlled by the decision in *Felton* v. *Grier*, 109 Ga. 320.
2. Even if there was any error in allowing the answer to the amendment to the petition, on the ground that it was not filed within a reasonable time after the amendment was allowed, the error was harmless, for the reason that there was no evidence offered to prove the allegations of the amendment, and the failure to answer the same would not have the effect of admitting the truth of the averments therein contained.
3. The decision on the demurrer to the amendment did not necessarily involve the construction of the paper which was the foundation of the controversy.
4. There was no error in granting a nonsuit.

Submitted April 14, — Decided May 11, 1904.

Equitable petition. Before Judge Gary. Richmond superior court. June 22, 1903.

On March 8, 1900, Elvira Marshall presented to Hon. E. L. Brinson, then judge of Richmond superior court, her petition, which sets out that on July 9, 1888, she conveyed a certain lot of land to a loan company to secure a loan, repayable in 120 months, in monthly instalments of $4.50, the entire amount called for being $540, and the company gave her bond to reconvey on payment; that up to July, 1895, she had repaid $340, but was $33 in arrears, learning which one Blodgett, her grandson, proposed to her to pay off the arrears and lend her $10, if she would transfer the bond to him to secure him for these amounts and anything further he might pay out for her on the loan, she to have the right to redeem the bond at any time within five years by repaying him any amounts so paid out by him and 8 per cent. interest; that she agreed to this, and on July 3, 1895, to effectuate the same, transferred the bond to him and executed with him an agreement, which recites that he "has purchased from" her, for

$10, the bond, and that if, at any time within five years from date of the agreement, she " desires to purchase back from him his interest under said bond for titles or to the property itself," and shall repay the $10 and all paid by him on the loan or property, with 8 per cent. interest, then he " gives her the option to purchase back;" that the bond was transferred by a transfer endorsed thereon and absolute on its face, and the contemporaneous agreement was separately drawn; that his conduct in having the papers separately drawn, so that on the face of the bond he seemed absolute owner thereof and could thereby obtain title to the property, was a fraud upon her, for reasons stated; that under the agreement he advanced her $200, balance due on the loan, and on its repayment obtained, on July 10, 1898, a deed to the property from the company, which saw only the absolute transfer of the bond when presented by him, and knew nothing of the contemporaneous agreement; that for some time after obtaining the deed he did not disturb her possession, but finally claimed the property as absolutely his thereunder, and, on March 5, 1900, swore out a dispossessory warrant against her, whereunder a constable was about to eject her; that he was seeking to sell or make other disposition of the property, which under his recorded deed he could do, to some innocent purchaser, to her irreparable injury, he being a mere day laborer and wholly insolvent; that she was not due him more than $300 under their agreement, whereas the property was well worth $600; and that she had no adequate legal remedy in the premises; wherefore she prayed that the warrant be enjoined, and that Blodgett be enjoined from making any disposition of the property or interfering with her possession or enjoyment thereof, and be decreed to convey it to her on payment of what might be justly due him under their agreement, and for general relief.    The court sanctioned the petition and restrained him and the constable, as prayed.

On March 24, 1900, Blodgett filed his answer, which admits the transfer and agreement and says " that she transferred to him said bond for titles and signed said written agreement marked exhibit A, attached to her petition, as security for all amounts that this defendant should have to pay on her account to said investment company and for the purpose of redeeming the land;" admits that the company had made him a deed, but sets up that

he had advanced her more than $200, and alleges that she "is indebted to him in the sum of $462.97, with 8 per cent. interest from March 19th, 1900, an itemized statement of said account being attached," which account is in the shape of a bill, " Elvira Marshall to Charles Blodgett, Dr.," contains divers items of debit and a credit of " Amts. received from Elvira Marshall," and shows a balance of "total amt. due up to March 19, '00 — $462.97;" denies insolvency, or fraud, or that he is her grandson, or is contemplating any disposition of the property, or that it is worth $600, averring its value to be about $450 ; and admits swearing out the warrant, but avers it was done because she had failed " to reimburse him" and was injuring the property; and prays judgment against her for the $462.97.   On April 17th, 1901, defendant filed an amendment to his answer, which strikes from this allegation thereof the words in italics:   " That she transferred to him said bond for titles and signed said written agreement marked exhibit A, attached to her petition, *as security for all amounts that this defendant should have to pay on her account to said investment company and for the purpose of redeeming the land.*"

On June 1, 1900, Elvira Marshall died, and on April 17, 1901, A. S. Ulm, then her administrator, filed an amendment to his intestate's petition.    This amendment alleges, (1) that at the time of the agreement of July 3, 1895, Blodgett was well aware that, by the terms of her contract with the loan company, Elvira was entitled to the possession of the land ; (2) that the agreement of July 3, 1895, was not an absolute sale of the bond for title, but simply an hypothecation thereof to secure Blodgett for what he might pay out for Elvira thereunder, and the right of possession of the land was still to remain in Elvira ; (3) that if Blodgett had, under said agreement, any right to obtain a deed to himself, the deed was simply a security as the bond had been ; (4) that from date of the agreement up to February, 1900, Elvira was in continuous, undisturbed possession of the property, living and keeping store in one house thereon and renting out another, but about the latter date, by reason of the infirmities of age and approaching blindness, she became unable to conduct her store, and removed to a daughter's, intending to rent the store out; that immediately thereafter Blodgett set up a claim that the property was his absolutely, and by such claim prevented her from renting out the

store, and intimidated her tenants in the other house from paying her rent, whereby, her daughter being only a poor washerwoman and only able to afford her shelter, she was in a distressed and destitute condition; and while in this state, Blodgett swore out the dispossessory warrant against her, and to obtain means of subsistence and legal aid to defend herself, she was compelled to sell two $40 shares in the loan company, all the property she then had; and that said warrant was sworn out maliciously and without probable cause, Blodgett then well knowing that Elvira was not his tenant and did not owe him $250, or any part thereof, as rent arrear, as he deposed; (5) that at the hearing on the rule nisi Blodgett did not attempt to sustain the warrant, but dismissed the same, whereupon Elvira, on April 9, 1900, rented out the store at $5 per month till October 1, 1900, to a tenant whom she put in possession and from whom she received the rent for April; (6) that, on learning of such renting, on April 10, 1900, Blodgett, by his claim that he owned the property absolutely and by threats of eviction, intimidated her tenants in the store and her other tenants into attorning and paying rent to him, thereby totally depriving Elvira of any income from the property; (7) that, being thus harassed and deprived of all her property and means of subsistence, Elvira succumbed to grief and privation, died on June 1, 1900, in utter indigence, and was buried at the public expense; (8) that continuously since May 1, 1900, Blodgett has tortiously held possession of the property and received its rents, of the value of $120 per year; (9) that, by his tortious dispossession and usurpation of rents during Elvira's lifetime, defendant profited, whereby a right of action to recover damages therefor in this action accrued to her and has survived to her administrator; (10) that, by like retention and usurpation since Elvira's death, a like right has accrued to her administrator; (11) that the said damages to Elvira are $200 actual, and $200 punitive; (12) that said damages to her administrator are $200 actual, and $200 punitive; (13) that Blodgett has acted, in the premises, in bad faith, and has been stubbornly litigious, and put Elvira and her administrator to unnecessary trouble and expense, to wit, counsel fee of $60; (14) that plaintiff amends the prayer by praying damages actual, punitive, and expenses of litigation, as above stated; and that the property be decreed property of Elvira's estate; and if

debt be found against, and no damages for, plaintiff, the property be sold, the debt paid, and the residue turned over to plaintiff.

On April 18, 1901, defendant filed his demurrer to the petition as amended, on the grounds: (1) no cause for action; (2) amendment sets forth new and distinct cause of action; (3) joinder of causes *ex contractu* and *ex delicto*; (4) no tender; (5) no compliance with agreement of July 3, 1895, alleged; (6) said agreement "shows on its face that it was an option to purchase land and that the time limit therein specified, to wit, July 3d, 1900, has expired" without Elvira or her administrator exercising the same; (7) that "said contract or option was a personal one and was limited to Elvira Marshall only, and was not to be assigned or devised, and her administrator can not exercise the right therein given;" (8) that "said bond for title and said agreement show upon their faces that they were not given as security for a debt, that Marshall owed no debt to Blodgett, but said exhibits show a bargain and sale with a contemporaneous agreement to repurchase in Marshall;" (9) "defendant specially demurs to paragraphs 6, 7, 8, 9, 10, 11, 12, 13, and 14 of said amendment, upon the ground that these counts sound in tort and ask for punitive damages, and that said items of damage are not recoverable in this action, the same being founded on a contract." On February 21, 1902, the court rendered judgment on the demurrer: "Said grounds of demurrer numbered one, two, four, five, six, seven, and eight are hereby overruled. The grounds of demurrer numbered two [three?], and nine are hereby sustained, and all claims for punitive damages alleged in plaintiff's petition are hereby dismissed and stricken." Neither party excepted to this judgment. On April 28, 1903, defendant filed an answer to the above-stated amendment of April 17, 1901, which answer is: (1) That he is not prepared to admit the truth of the allegations as contained in paragraphs 1, 2, 3, 4, and 5 of plaintiff's amended petition, and respectfully prays that he be required to prove each and every one of the same. (2) That paragraphs 6, 7, 8, 9, 10, 11, 12, 13, and 14 of said petition having been stricken on demurrer, defendant does not feel called upon to answer the same."

On April 29, 1903, the cause came on for trial before Hon. Wm. T. Gary, then judge, and, before the introduction of any testimony, defendant moved to amend his above-stated answer of

April 28, 1903, by striking therefrom paragraph 1 and inserting in lieu thereof the following: " (1) That for lack of sufficient information, he is not prepared to admit or deny the truth of the allegations contained in paragraph 1 of the amended petition. (1*a*). That he denies the truth of the allegations contained in paragraphs 2, 3, 4, and 5 of the amended petition." Plaintiff moved to strike above-stated answer of April 28, 1903, on the grounds, (*a*) that the same was not a legal answer, inasmuch as it did not admit or deny the allegations of the amendment of April 17th, 1901, to the petition, or state that defendant could neither admit nor deny those allegations for want of sufficient information ; and (*b*) that said answer was not filed until April 28, 1903. Plaintiff at the same time objected to the amendment offered on April 29, 1903, objecting generally to said amendment, as a whole, on the grounds (*a*) that there was nothing to amend by (inasmuch as the answer of April 28, 1903, sought to be amended, was not a legal answer, as it did not admit or deny the allegations of the amendment of April 17, 1901, to the petition, nor state that for lack of sufficient information defendant could neither admit nor deny the same, and was not filed till April 28, 1903) ; and (*b*) that it was not duly verified.     And objected specially to paragraph 1 of said proposed amendment, on the ground that it failed to give any reason for, or explanation of, defendant's ignorance of the matters therein referred to.     Defendant then verified said proposed amendment, "that he did not omit the facts set out in the above amendment to the answer for the purpose of delay, and that the answer is not now filed for delay."     The court overruled said motion to strike the answer filed April 28, 1903 ; and overruled the objections to said proposed amendment to said answer, and allowed said amendment.     These rulings were excepted to, and error is assigned thereon.

*Salem Dutcher*, for plaintiff.     *W. H. Barrett*, for defendant.

Cobb, J.     1. The case upon its merits turned upon the construction of a paper.     The plaintiff contended that the agreement contained therein was simply one whereby one of the parties agreed to transfer to the other an interest in property to secure the payment of a debt.     The defendant contended that the paper contained an absolute transfer of the title, with the right reserved to repurchase

the property within a given time upon the payment of certain amounts. At the date of the trial the time specified in the contract had expired. Such being true, the case is brought within the principles laid down in the case of *Felton* v. *Grier*, 109 *Ga.* 320, which is directly controlling. The judge therefore did not err in granting a nonsuit, provided the case was in such condition that he could pass upon the merits at the time the motion was made. Whether the case was in such condition depends upon the determination of other questions raised in the record, which will be now decided.

2. It was contended that the court erred in allowing an answer to be filed to an amendment to the petition, such answer not having been filed, as it was claimed, within a reasonable time. It is unnecessary to determine whether the court erred in allowing the answer to be filed, for the reason that, as the amendment to the petition was offered after the appearance term had passed, the allegations of the amendment would have to be proved even though the defendant had failed entirely to answer it. See *Hudson* v. *Hudson*, 119 *Ga.* 637. Even if it could be properly held that the court abused its discretion in allowing the answer to be filed, the error was harmless, for the reason that there was no evidence offered to substantiate the allegations of the amendment.

3. It was contended that the nonsuit was erroneous, for the reason that the court, in passing upon the demurrer to the petition, had in effect held that the paper over which the controversy arose was an agreement to secure a debt, and not a sale with an option to repurchase. It is well settled that if the court upon demurrer holds that the petition sets forth a cause of action, this decision, so long as it stands unreversed, is res adjudicata in the subsequent stages of the case. *Kimbro* v. *Railway Co.*, 56 *Ga.* 187 (1); *Turner* v. *Cates*, 90 *Ga.* 742 (2); *Ellis* v. *Almand*, 115 *Ga.* 336 (2); *Ga. Northern Ry. Co.* v. *Hutchins*, 119 *Ga.* 505. It has also been held that a judgment on demurrer, until reversed, concludes the parties on all questions necessarily involved in the decision. *Ga. Northern Ry. Co.* v. *Hutchins*, supra. It would seem to follow from this that it would not conclude upon any question not necessarily involved in the decision on the demurrer. When the petition, the amendment, the demurrer, and the judgment on the demurrer are all considered together, it sufficiently

appears that the question as to the proper construction of the paper was not necessarily involved in the decision rendered on the demurrer. The demurrer set up, as a reason why the petition should be dismissed, that the paper exhibited thereto contained a contract of absolute sale, with an option to repurchase. The court overruled this ground of the demurrer. As there were allegations of fraud in the petition, which if true would have authorized a recovery even if the defendant's construction of the contract was correct, the court in overruling the demurrer, which was simply holding that the petition set forth a cause of action, did not necessarily pass upon the character of the paper in question.

4. It was contended that the nonsuit was error, for the reason that the defendant had admitted in his answer that the paper which was the foundation of the controversy merely created a security for a debt. If this admission had remained in the answer, it may be that the plaintiff would have been entitled to take advantage of it, either as in the nature of a waiver of the defendant's strict rights under the paper, or as a consent by him that the case might be determined upon that theory without reference to what was the correct interpretation of the paper. But this portion of the answer was stricken by amendment, and therefore it stood simply as an admission by the defendant as to what was the true interpretation of the paper. Admissions of fact in a pleading can always be taken advantage of by the opposite party, even though the pleading should be stricken or withdrawn. *Lydia Pinkham Med. Co.* v. *Gibbs*, 108 *Ga.* 140–141; *Cooley* v. *Abbey*, 111 *Ga.* 443; *Ala. Mid. Ry. Co.* v. *Guilford*, 119 *Ga.* 523; Civil Code, § 5056. This rule, however, has no application where the admission is simply an opinion on the part of the party making it as to the legal effect of a paper. See, in this connection, *Baldwin Fertilizer Co.* v. *Carmichael*, 116 *Ga.* 765, and cit. If the paper containing the contract is ambiguous or doubtful in meaning, the interpretation placed upon it by one of the parties may, under certain circumstances, be of some importance. But where, as in the present case, the paper is free from ambiguity, and there can be no doubt about its legal meaning, it is immaterial what may have been said by one of the parties, either in court or out of court, as to what the paper meant, when such statement has not been acted upon by the other to his prejudice.

After a careful consideration of the record, we see no reason for reversing the judgment.

Judgment affirmed. All the Justices concur.