UNITED STATES OF AMERICA *v.* HATCHER, receiver, *et al.*

Nos. 11983, 11984.   MARCH 10, 1938.

*Lawrence S. Camp, A. Sidney Camp, Harvey H. Tysinger,* and *Hadley W. Libbey,* for plaintiff in error.

*Little, Powell, Reid & Goldstein, DeFore & Estes, Harris, Harris, Russell & Weaver, Alston, Alston, Foster & Moise, Jones, Russell & Sparks,* and *Gilbert C. Robinson,* contra.

BELL, Justice. These two cases will be considered together. They arise out of litigation a part of which has been heretofore

reviewed by this court. In the year 1933, by an order of the superior court of Bibb County, T. Ayer Hatcher and James N. Frazer were made receivers of the assets in Georgia of three foreign corporations, including the Public Indemnity Company and the International Reinsurance Corporation. Many creditors intervened. On August 21, 1934, the United States of America filed an intervention based on a judgment in a stated sum which it had recovered against Public Indemnity Company as surety upon a forfeited bail-bond. The matter of allowing claims came on to be heard on October 21, 1935. At that time there was introduced by creditors other than the United States of America a contract, dated January 11, 1933, by which the Public Indemnity Company conveyed to the International Reinsurance Corporation all of its property, except $60,000 of first mortgages not in default, and all claims of the Public Indemnity Company against the M. & S. Agency; the International Reinsurance Corporation to assume, pay, satisfy, and discharge all of the liabilities of the Public Indemnity Company, fixed and contingent, except its liability on bail-bonds. In this contract it was further provided that the International Reinsurance Corporation would pay to the Public Indemnity Company "the sum, if any, by which the proceeds of the property of the Public Indemnity Company, agreed to be conveyed hereunder, shall exceed the liabilities of the Public Indemnity Company agreed to be paid hereunder." It was further agreed that no part of the funds in the hands of the receivers was derived from any mortgages payable to the Public Indemnity Company or from the M. & S. Agency. After the hearing, the court entered a decree holding that the contract in question was valid, and that all of the assets formerly belonging to the Public Indemnity Company in the hands of the receivers passed under it to the International Reinsurance Corporation; that equity required that those assets be applied by the International Reinsurance Corporation to the payment of those debts of the Public Indemnity Company that the International had contracted to pay; that it had not contracted to pay bail-bond liabilities; and that its assets could not be applied to those liabilities in preference to its other creditors. The court in its decree classified the creditors, directed the order in which the various claims should be paid, and provided for the payment of the costs and expenses of the receivership. The decree was en-

tered on December 11, 1935. The United States of America, being thus excluded from participation in the assets, sued out a bill of exceptions and brought the case to the Supreme Court. The decision by this court was as follows: "The court did not err in rendering the judgment excepted to. The right of the plaintiff in error to maintain its claim and recover thereon depended upon the question whether the contract between Public Indemnity Company and International Reinsurance Corporation was valid, or was invalid on the ground of fraud. Although the parties to this case are very numerous, and the record is very long, and the documents numerous and lengthy, there is nothing in the record to show that the contract referred to was invalid for the reasons alleged. The court properly rendered the decree excepted to." *United States of America* v. *International Reinsurance Corporation*, 183 *Ga.* 614 (189 S. E. 237).

Thereafter, on February 19, 1937, before the remittitur was made the judgment of the trial court, the United States of America through its attorneys presented to the judge of the superior court of Bibb County an amendment to its original intervention which it had filed in the cause on August 21, 1934; and on March 11, 1937, it offered a second amendment, called an amendment to its amendment of February 19. In these amendments the following allegations were made: There is pending in the chancery court of the State of Delaware an equitable proceeding to rescind, upon the ground of fraud, the contract executed on January 11, 1933, between the Public Indemnity Company and the International Reinsurance Corporation. This contract was executed by the parties in the State of Delaware. The suit in Delaware shows that the contract was made for the purpose of defrauding creditors of the Public Indemnity Company whose claims are based upon bailbonds, and especially the United States of America, which is the sole creditor of this class in the matter before the superior court of Bibb County. "The assets reserved for the payment of such claims, to wit, mortgages in the amount of $60,000 face value and the proceeds of the M. & S. Agency, are in fact worthless, whereas the assets of the Public Indemnity Company, according to the receiver's report in this matter, amount to the sum of $64,678.03 liquidated, and its liabilities are only $54,483.61." The United States of America has by proper pleadings in the Delaware court

alleged the fraud perpetrated upon it by means of this contract, and has prayed in that court for a judgment rescinding the contract "as void because of such fraud." The chancery court of Delaware is the only proper jurisdiction in which the contract may be attacked, since it was executed in that State, and no other court can properly pass upon the legality of the same. The superior court of Bibb County, at the time of passing its order of December 11, 1935, did not have any notice or evidence of the proceedings in the Delaware court, nor did it have any evidence as to the validity or invalidity of the purported contract. "Intervenor further shows that its claim in this matter is based solely on a bail-bond; that its claim is against the Public Indemnity Company of Newark, New Jersey, whose assets in the hands of the receivers are more than its liabilities, and that should the Government prevail in its suit pending in Delaware hereinbefore referred to, its claim will be paid in full, if the funds in the hands of the receivers are not disbursed before the court of Delaware can pass upon the validity of the contract of purchase and sale hereinbefore mentioned; but if said receivers are permitted to distribute the funds in their hands before the court in Delaware makes its decision, loss of its entire claim will result to this intervenor. Intervenor further shows that unless said receivers are required to withhold from distribution a sum equal to the amount of this intervenor's claim, this intervenor will suffer irreparable loss and injury, and it would result in a multiplicity of suits at law."

Other facts were alleged to show fraud between the Public Indemnity Company and the International Reinsurance Corporation. To these amendments objections were filed by other creditors upon the ground, among others, that the judgment of the Supreme Court affirming the judgment of Bibb superior court of December 11, 1935, was a final determination of the cause, and that all matters set forth in the amendments offered by the United States of America, including the question of jurisdiction, were matters in issue or which might have been put in issue before the judgment of December 11, 1935. After considering the amendments and the objections, the court, on March 11, 1937, passed an order disallowing the amendments. To this judgment the United States of America excepted. Such is the case as presented by bill of exceptions No. 11984.

820

On March 24, 1937, the United States of America presented to the judge of the superior court of Bibb County an extraordinary motion for a new trial, based upon alleged newly discovered evidence, all relating to the alleged fraud between Public Indemnity Company and International Reinsurance Corporation. The movant alleged various facts by which it would establish the fraudulent character of the contract made by these companies on January 11, 1933, and averred that it did not know of these facts, and could not have discovered the same by ordinary diligence before the judgment of December 11, 1935, and did not actually discover the same until some time in January, 1936. To this motion answers and objections were filed. On April 14, 1937, the court passed an order overruling the motion. To this judgment the United States of America excepted, and the bill of exceptions is numbered 11983 in this court. The two cases will be considered in the order in which they have been here stated.

■ The court did not err in refusing to allow the amendments. "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." Code, § 110-501. In offering the amendment the movant did not ask that the former judgment be reversed or set aside. So far as appeared, all matters referred to in the amendments were put in issue or might have been put in issue in the cause wherein the former judgment was rendered. The judgment of December 11, 1935, was a final disposition of the case. It was affirmed by this court without direction or condition. The intervention previously filed by the United States of America had thus spent its force, and there was nothing to amend by. In *Southern Mutual Insurance Co.* v. *Turnley,* 100 *Ga.* 296 (7) (27 S. E. 975), it was held too late to amend a petition after a judgment had been rendered thereon and a motion for a new trial was pending. In the opinion it was said: "There must be some limit as to the time of amendment, and although our law is quite liberal on this subject, the Code providing that amendments may be made 'at any stage of the cause' (Civil Code, § 5997), we do not think this means that they may be made after the case has been tried and a judgment rendered therein which has

not been set aside or vacated." In *Benning* v. *Horkan,* 123 *Ga.* 454 (51 S. E. 333), it was held: "After a motion for new trial has been overruled in the superior court, the case brought to this court, and the judgment affirmed, it is too late to amend by adding new grounds to the motion, though the amendment be tendered before the remittitur from this court is made the judgment of the superior court." In *Federal Investment Co.* v. *Ewing,* 166 *Ga.* 246 (142 S. E. 890), headnotes 1 and 2 are as follows: "1. Where a case made by petition for equitable relief, with a cross-action by the defendant praying for judgment in a stated sum, was submitted to the judge without a jury, his finding for the plaintiff on both the original petition and the cross-action was a final judgment, and its affirmance by the Supreme Court adjudicated all matters in issue or that might legally have been put in issue. 2. Affirmance of the judgment without condition or direction left the trial court without jurisdiction to entertain or pass on a 'special plea' filed after the judgment of affirmance." In the opinion it was said: "'The judgment first rendered in the trial court in favor of Ewing, affirmed by this court, was a final judgment, and it adjudicated all matters in issue or which, under the rules of law, might have been put in issue. . . When the case was formerly before this court the judgment of the trial court was affirmed without direction or condition. As the result of that ruling, the 'case was entirely out of court,' and the superior court was without jurisdiction to entertain, or render judgment upon, a 'special plea' filed, as shown above, subsequently to the affirmance by the Supreme Court." See also *Central R. Co.* v. *Paterson,* 87 *Ga.* 646 (13 S. E. 525); *Kehr* v. *Floyd,* 135 *Ga.* 424 (69 S. E. 550); *Goldsmith* v. *Georgia Railroad Co.,* 62 *Ga.* 542; *Real Estate Bank & Trust Co.* v. *Baldwin Locomotive Works,* 145 *Ga.* 105 (88 S. E. 584); *Land Development Cor.* v. *Union Trust Co.,* 180 *Ga.* 785 (5) (180 S. E. 836). Under these authorities it is clear that the court did not err in refusing to allow the amendments to the intervention.

■ In paragraph 3 of the motion for new trial the movant alleged the following, in reference to the hearing which resulted in the decree of December 11, 1935: It anticipated that the priority of the movant's claim would be the only question then before the court, but a stipulation of facts was proposed which included the

contract of January 11, 1933, between the Public Indemnity Company and the International Reinsurance Corporation, embodying the terms hereinbefore stated. Counsel for movant had no notice that this contract would be offered in evidence or included in the stipulation of facts, and the only knowledge that the movant had of this contract was that it was being attacked for fraud by the commissioner of banking and insurance of New Jersey in an equitable petition pending in the chancery court of the State of Delaware, and this movant by its counsel imparted to the court all the knowledge that it possessed on the question, namely the pendency of the equitable petition in the chancery court of Delaware. Counsel for movant had no evidence to offer to prove the invalidity of the contract, but did state that the question of its validity had been raised in Delaware, and contended that the Delaware court and not the superior court of Bibb County was the proper jurisdiction to determine that question. Over protest of counsel for movant, the contract "was stipulated," and because movant's counsel could not at that time produce evidence of its invalidity for fraud or otherwise, the court held that the contract was valid, and that all of the assets formerly belonging to the Public Indemnity Company in the hands of the receivers passed under it to the International Reinsurance Corporation. In an answer filed to this motion an issue of fact was made for determination by the trial judge as to whether movant should have anticipated that the validity of the contract would be drawn into question, and as to whether the contract was included in the stipulation of facts over the protest of counsel for movant.

The motion for new trial was based mainly upon an affidavit signed by one John W. Meany, an auditor or accountant who was employed by the commissioner of banking and insurance of New Jersey in furtherance of the proceedings in the Delaware chancery court instituted by such commissioner as liquidator of Public Indemnity Company against the receivers of International Reinsurance Corporation. The affiant deposed that he was so engaged on or about October 1, 1935, and that the first report that he was able to make to said commissioner and the United States of America was submitted on January 13, 1936. He further stated in his affidavit that he was informed that the pleadings filed in the chancery court prior thereto alleged insolvency of the Public Indemnity Company

at the time of the contract of January 11, 1933, and fraudulent misrepresentation of its financial condition by the International Reinsurance Corporation; but that his firm was unable to "give any substantiation of these allegations" until January 13, 1936. He stated facts to show insolvency of the International Reinsurance Corporation at the time the contract was executed, and to indicate that the contract was fraudulent as against the United States of America. He stated that the affairs of the International Reinsurance Corporation were very complicated and the books were scattered from New Jersey to California. He was informed "that the reason why we were not employed previous to October, 1935, was because the pleadings in the said proceedings in Delaware had not been brought to issue, having been subject to various motions and demurrers." The affidavit was executed on March 20, 1937, for use in the present proceeding. Attached to the motion for a new trial was an affidavit by Hadley W. Libbey, who testified that he as an attorney in the office of the attorney-general of the United States, and, acting for and on behalf of the United States of America, has "knowledge of the facts and circumstances giving rise to the making of this affidavit," which facts and circumstances he then stated. He proceeded to state that on January 11, 1933, when the contract was made between the Public Indemnity Company and the International Reinsurance Corporation, the total of the assets reserved by the former had the value of only about $30,000, while at the same time the United States of America had recovered judgments against Public Indemnity Company amounting to more than $79,000, and was the obligee in bail-bonds signed by that company amounting to approximately $300,000. Still other facts were stated, but the affidavit did not purport to say when the related facts and circumstances came to the knowledge of the affiant, whether before or after the judgment of December 11, 1935. He stated nothing about any attempt to discover fraud as between the two corporations. The motion disclosed that the assistant secretary of the Treasury of the United States had actual knowledge of the existence of the contract within only two days of its execution, and that he at once gave notice to both the contracting parties that the "Treasury objects to any transaction which does not fully protect rights of United States on account of all bonds or other obligations of Public Indemnity Company in favor

of the United States, and will take such steps as may be necessary to assure full payment of all claims of United States on account of such bonds which have occurred or which may occur."

Attached to the motion were copies of many letters and telegrams, bearing different dates in the year 1932, between officials of the Public Indemnity Company and the officials of the Treasury Department of the United States relating to bail-bond claims of the latter against the former, and revealing "that the company was indebted to the United States in an amount far in excess of the amount reserved in the contract to cover bail-bond claims." On November 18, 1932, the assistant secretary of the Treasury suspended the authority of the Public Indemnity Company to execute new bonds in favor of the United States of America, because it had failed to satisfy judgments recovered on previous bonds. It appears from the record that before September 5, 1934, the commissioner of banking and insurance of the State of New Jersey had filed a suit in the chancery court of the State of Delaware, attacking for fraud the contract of January 11, 1933, and seeking its rescission. On that date, to wit September 5, 1934, the United States of America was permitted to intervene and did intervene in that proceeding, adopting the allegations made by the petition therein. Attached to the motion for a new trial was an affidavit signed jointly by the United States attorney for the Northern District of Georgia and two of his assistants who represented the United States of America in this cause in the courts of Georgia, the material portions of the affidavit being as follows:

"Deponents say that they are personally acquainted with Hadley W. Libbey, of Washington, D. C., having known him for a period of two years or more, and that they know that he is an attorney in the office of the attorney-general of the United States, and that he has been in active charge of the claims of the United States in various suits against the Public Indemnity Company and the International Reinsurance Corporation; that Mr. Libbey is a man of high character, and, because of his official position, his knowledge of the matters contained in his affidavit is better than that of any other person in the government department. Deponents state that they do not know John W. Meany, whose affidavit is attached to this motion for a new trial, in person, but that they do know that he is chief accountant of a firm of certified public accountants,

George H. Kingsley and Company, of New York City, and that he
has had personal charge of the audits made by that firm of the
books and records of the Public Indemnity Company and the Inter-
national Reinsurance Corporation, and that his firm was employed
by the commissioner of banking and insurance of the State of New
Jersey in furtherance of the proceeding in the Delaware Chancery
Court brought there by the said commission. Deponents know the
said John W. Meany through interviews had with attorneys and
other parties representing the said commissioner of banking and
insurance, and also through the Treasury Department and the De-
artment of Justice in Washington. Deponents further state that
they have been the sole counsel for the United States throughout
the pendency of these proceedings in this court, and that neither
they nor any one of them could have discovered the newly dis-
covered evidence set out in the extraordinary motion for a new
trial before the final decree and order of distribution dated De-
cember 11, 1935, by the exercise of ordinary care by them respec-
tively. Deponents further state that none of this evidence set out
in the motion for a new trial was known to them or to the movant,
the United States of America, prior to said decree, and that de-
ponents have tried diligently to obtain evidence showing the
fraudulent character of the contract complained of, trips to Wash-
ington have been made by deponents, many letters have been writ-
ten to the auditors, and to the commissioner of banking and insur-
ance of the State of New Jersey, but the evidence as set out in this
motion for a new trial could not be obtained until after the auditors
made their report in January, 1936, and the amendment to the
original bill in equity in the chancery court of Delaware, dated
April, 1936, was filed." The motion contained some allegations
which have not here been stated; but in view of the other facts
shown they could not be considered so conclusive in character as to
require a decision different from that which must be rendered on
the facts stated.

"When a motion for a new trial is made on the ground of newly
discovered evidence, it must appear by affidavit of the movant and
each of his counsel that they did not know of the existence of such
evidence before the trial, and that the same could not have been
discovered by the exercise of ordinary diligence." Code, § 70-205.
"Extraordinary motions for new trials, based upon the ground of

newly discovered evidence, are viewed by the courts with even less favor than original motions on such ground, and a stricter rule has been applied to the former." *Norman* v. *Goode,* 121 *Ga.* 449, 455 (49 S. E. 268). In *Coggeshall* v. *Park,* 162 *Ga.* 78 (132 S. E. 632), it was held: "Extraordinary motions for new trial are not favored. . . The extraordinary motions for new trials contemplated by our statute are such as do not ordinarily occur in the transaction of human affairs, as when a man has been convicted of murder, and it afterwards appears that the supposed deceased is still alive, or where one is convicted on the testimony of a witness who is subsequently found guilty of perjury in giving that testimony, or where there has been some providential cause, and cases of like character." It appears from the record that the assistant secretary of the Treasury of the United States of America, which is the department having charge of such matters (U. S. C. A. title 6, §§ 1-15), acquired knowledge of the existence of the contract between the Public Indemnity Company and the International Reinsurance Corporation within two days after its execution on January 11, 1933. Only a few weeks before, this same official had revoked the authority of the Public Indemnity Company to sign any bonds payable to the United States of America. The judgment which the extraordinary motion for a new trial sought to open was rendered December 11, 1935. The attorney representing the United States knew at that time that the contract of January 11, 1933, was under attack for fraud in the chancery court of the State of Delaware, but had no evidence of fraud which he was able to submit. None had been furnished to him, although the United States of America had intervened in the Delaware proceeding, as well as in the Georgia case, more than a year previously. Finally, the commissioner of banking and insurance of the State of New Jersey employed an auditor to investigate the affairs of Public Indemnity Company and International Reinsurance Corporation, with the result that on January 13, 1936, the auditor filed a report tending to show fraud. The United States of America, though adopting the allegations as to fraud in the Delaware proceeding, did not employ the auditor, but waited for the original plaintiff to do so. The auditor was not employed until October 1, 1935. While it may be true that the United States of America did not have evidence of fraud until the submission of the auditor's report on

January 13, 1936, it can not be said as a matter of law that it should not in ordinary diligence have discovered the fraud and obtained evidence of it before the superior court of Bibb County rendered the judgment of December 11, 1935. It knew that fraud had been charged, and it had adopted allegations to that effect in September, 1934. It knew that it had judgments against the Public Indemnity Company which it was seeking to collect, and that this company was no longer a satisfactory surety. It did not have to wait on the official of the State of New Jersey to assemble the evidence, nor can it be said as a matter of law that diligence would not have required any person at interest to act before October 1, 1935. The auditor stated that he was informed that the reason that his firm was not employed before October, 1935, was because the pleadings in the Delaware court had not been brought to issue, having been subject to various motions and demurrers. Why had the pleadings not been brought to issue earlier, and why account for the delay only by an affidavit of the auditor, who forsooth does not pretend to know anything upon this question except that he is *informed* that the issues were not perfected until about October 1, 1935? Parties are presumed to know at least something of the facts at the time of framing their pleadings. It appears that after an auditor was employed only about three and one-half months were required in order to bring the facts to light.

As indicated above, it does not appear when the attorney in the Department of Justice having charge of this matter acquired knowledge of the facts to which he deposed in reference to the contract of January 11, 1933. But the affidavit of the auditor, John W. Meany, states the facts which are mainly offered as newly discovered evidence. It is a fair inference from the record that except for the discoveries contained in the report as submitted by Meany on January 13, 1936, the present motion for a new trial would never have been filed. Meany then appears to be the chief witness upon whom the movant is relying. "If the newly discovered evidence is that of witnesses, affidavits as to their residence, associates, means of knowledge, character, and credibility must be adduced." Code, § 70-205. There was no sufficient compliance with this section. As to all the matters discussed in this opinion, the United States Government is to be treated as any other litigant so far as the present controversy is concerned. When

it seeks by an extraordinary motion for new trial to avoid a judgment against it, it is governed by the rules as to diligence and as to notice to its agents as fully as are individuals or private corporations. "Thus compelled to .come into equity for a remedy to enforce a legal right, the United States must come as other suitors." Brent *v.* Bank of Washington, 10 Pet. 596 (9 L. ed. 547) ; United States *v.* Shelby Iron Co., 273 U. S. 571 (47 Sup. Ct. 515, 71 L. ed. 781). If the judge of the superior court would have been authorized at all to grant a new trial on this motion, he certainly was not bound to do so under the facts appearing. If the circumstances were such as to reach his discretion, no abuse of discretion appears. Therefore this court is obliged to say that the judge did not err in overruling the motion for a new trial.

*Judgments affirmed. All the Justices concur.*