SNYDER, executrix, *et al. v.* ELKAN *et al.*

No. 12303.    SEPTEMBER 21, 1938.    REHEARING DENIED NOVEMBER 23, 1938.

*Carlisle & Bootle* and *Harry S. Strozier*, for plaintiffs in error.
*Hall & Bloch, James C. Estes*, and *Harris, Harris, Russell & Weaver*, contra.

BELL, Justice. In October, 1934, Eli Elkan filed a suit against Bibb County, the board of commissioners, and the sheriff, seeking to set aside a tax sale at which Bibb County was the purchaser, and for other relief. By amendment the Penn Mutual Life Insurance Company and L. Snyder were made parties defendant. Others were also made parties. The petition as amended contained, among others, the following allegations: In June, 1929, Hyman D. Kaplan conveyed to petitioner by a deed to secure debt described real

estate in the City of Macon, Bibb County, on which was situated a house known as 852 Cherry Street. In May, 1926, Kaplan executed and delivered to the Penn Mutual Life Insurance Company a deed to secure debt, conveying a tract on which is located a store building known as 522 Poplar Street. In November, 1930, Kaplan executed and delivered to L. Snyder a deed to secure debt, conveying property on which is situated an apartment-house known as 818 Cherry Street. Kaplan, the common debtor, is insolvent. On November 7, 1933, Kaplan owed State and county taxes for the years 1931 and 1932 on both of the Cherry Street tracts, and State and county taxes for the year 1932 on the Poplar Street property; and on that date the property known as 852 Cherry Street, on which the plaintiff held a security deed, was exposed for sale for the purpose of satisfying tax executions which had previously been issued for the taxes mentioned. At such sale the County of Bibb was the highest and best bidder for $1726.08, this being the amount of the taxes, interest, and costs due on such executions. The sheriff executed and delivered to the county a deed conveying the property described in the levy. It was alleged that the sale was incomplete, for the reason that the county never paid its bid and had not parted with any cash or other thing of value as consideration for the sheriff's deed; and that such deed was void because of excessive levy. The prayers were that the County of Bibb and the commissioners be enjoined from selling the property in dispute; that the tax deed be delivered up and canceled as a cloud on petitioner's title; that the levy and purported sale under the tax executions be decreed void because of excessiveness of the levy; and for decree against Snyder and Penn Mutual Life Insurance Company, compelling payment by them of such portion of the tax executions as are in the same proportion as the assessed valuation of the properties upon which they respectively hold security deeds bears to the assessed valuation of the properties owned by Kaplan for the respective years 1931 and 1932; and for such other relief as may seem meet and proper.

The county, the board of commissioners, and the sheriff demurred to the petition as amended. The court overruled the demurrers, and the demurrants excepted. There was no demurrer by the Penn Mutual Life Insurance Company or by Snyder. On a review of the case, the following rulings, among others, were made

by this court: (1) As against the demurrers, the petition alleged sufficient facts to show that the sale was void for excessiveness of levy. (2) It was not necessary to show a tender of any amount to the county, in view of the allegation that the county had not paid any part of its bid. (3) The petition alleged sufficient reason for the failure of the plaintiff to pursue the remedy of claim under the Code, § 92-7801. (4) "Inasmuch as the petition alleges sufficient facts for the avoidance of the sale and the tax deed on the ground that the levy of the executions was excessive, the petitioner, under the rulings in *Harry L. Winter* v. *First National Bank of Quilman,* 164 *Ga.* 364 (138 S. E. 794), *Phoenix Mutual Life Ins. Co.* v. *Bank of Kestler,* 170 *Ga.* 734 (154 S. E. 247), *Federal Land Bank of Columbia* v. *DeLoach,* 172 *Ga.* 281 (157 S. E. 477), and *Griffin* v. *Lane,* 177 *Ga.* 31 (169 S. E. 306), would be entitled to have the amount of the executions apportioned between the several security-deed holders, by making each separate piece of property liable for its proportion of the whole amount of the taxes, according to the respective valuations at which the properties were assessed and returned for taxation." (5) "Whether the tender alleged in the petition, together with the prayer that the other security-deed holders be required to pay their proportionate part of the tax executions, is sufficient to entitle the petitioner to redeem the property from the tax sale, need not now be decided. If upon the trial of the case the jury should find that the levy of the execution was not excessive and the sale for that reason not void, then the question would be presented for decision." *Bibb County* v. *Elkan,* 184 *Ga.* 520, 525 (192 S. E. 7). The effect of the decision was to reverse the judgment on demurrer, and to remand the case for trial before a jury. The foregoing is not intended as a complete statement of the allegations of the petition. For the remaining allegations, reference is made to the statement contained in the former report. Reference is also made to that report for additional rulings by this court.

On the subsequent trial the judge submitted to the jury only one issue of fact, namely, whether the levy was excessive, stating: "Now the issue of fact which you are to pass upon in this case is whether or not the levy of the tax fi. fas. on the Elkan property was excessive or not excessive; and the determination of that issue of fact resolves all the other issues in the case into issues of law, which

can not be determined until you return your verdict as to whether or not this levy in this case on the Elkan property was excessive or not excessive." After giving other instructions regarding this issue, the judge charged the jury as follows: "If you find that the levy in this case was excessive, you would not have anything to do with the result; and yet it is proper that I should charge you the result of your finding that it was excessive: the sale would be set aside, and the taxes would be prorated between the different owners of the properties. If you find it is not excessive, then the sale is a good sale and stands just as it is now when the case was brought to you. Now if you find ·that the levy was excessive, say, we the jury find for the plaintiff. If you find the levy was not excessive, say, we the jury find for the defendants." The jury found in favor of the defendants, that is, that the levy was not excessive. The verdict was returned on November 22, 1937. Notwithstanding this verdict, the plaintiff on the following day filed in court a motion against Penn Mutual Life Insurance Company and L. Snyder, for a decree in his favor compelling them to pay such portions of the tax executions "for 1931 and 1932 on· the property of Hyman D. Kaplan as are in the same proportion as the assessed valuation of the properties upon which they respectively hold security deeds bears to the assessed valuation of the properties owned by Kaplan, for the respective years 1931 and 1932." In this motion the plaintiff alleged that it appeared from the evidence that before the filing of the suit he had tendered·a stated amount as the portion of the taxes due on the property on which he held a security deed, together with interest and penalty; and that it appeared on the trial that the county had paid the costs and expenses of sale, "on account of its bid," on April 19, 1934, and had· paid the full amount of its bid on June 6, 1936, although it did not remit the State's portion until July 6, 1936. "Despite these facts as to the costs of the sale, the plaintiff during the trial of this cause, to wit on the 22 day of November, 1937; and before a verdict therein and even before the case was argued to the jury, tendered to the County · of Bibb the sum of $571.16, being the amount of the tender alleged in the original petition, plus the amounts [for costs and expenses of sale] which Bibb County had 'paid on account of its ·bid' on April 19, 1934, and this sum has been paid·into the registry of this court under the order of the judge thereof. . . Your petitioner

alleges that the tax sale complained of in the original petition and the amendments thereto was not completed at the time of the institution of this suit, and at the time of the amendment thereto, of September —, 1935, in which it was prayed that L. Snyder and the Penn Mutual Life Insurance Company be made parties thereto, and in which a decree was prayed against the said Snyder and Penn Mutual Life Insurance Company, compelling payment by them of such portion of the tax executions as are in the same proportion as the assessed valuation of the properties upon which they respectively hold security deeds bears to the assessed valuation of the properties owned by Kaplan for the respective years 1931 and 1932." After notice and hearing, the court sustained the motion for a decree non obstante veredicto, and rendered in the plaintiff's favor a judgment in personam, for stated sums respectively, against Penn Mutual Life Insurance Company and L. Snyder, hereinafter sometimes referred to as the defendants or as the other creditors. To this judgment the Penn Mutual Life Insurance Company and L. Snyder excepted. Thereafter Snyder died, and Mrs. Julia Snyder, as executrix, was made a party plaintiff in error.

The petition contained allegations and prayers indicating that the plaintiff was seeking an equitable apportionment of taxes under the principle stated in *Brooks* v. *Malledge,* 100 *Ga.* 367 (28 S. E. 119), as follows: "Where two creditors of a common debtor, who is insolvent, each has, relatively to the other, the highest lien upon a distinct parcel of real estate belonging to such debtor, and there are outstanding against the latter tax executions issued generally against him in personam and binding both parcels of the realty, the burden of discharging the liens of these executions should, as a general rule, upon equitable principles, be apportioned between the two lien creditors by making each of the two pieces of property liable ratably for its proportion of the whole amount of the taxes according to the respective valuations at which the property was assessed and returned for taxation." In that case, Matledge held a security deed and Brooks held a mortgage, both executed by the same person, but applying to separate tracts of land. Each tract had been sold under execution. After the amount due to Matledge had been credited on the execution in his favor, there remained due on his judgment a large sum. The common debtor was insolvent, and had failed to pay his taxes for several years. Executions had

been issued for such taxes, *and Matledge had purchased these executions and caused the fi. fas. to be transferred to him. The property on which Brooks held the mortgage had been sold for $1725, and this sum was in court for distribution.* Notwithstanding this sum was insufficient to pay the mortgage debt to Brooks, Matledge claimed the fund under the tax executions which had been transferred to him. The effect of the ruling by this court was that al-though the tax executions had been transferred to Matledge and he was demanding payment thereof in full, he could enforce them against the proceeds of the sale under the Brooks mortgage only upon the basis that the property on which he had held the security deed should, as between him and Brooks, be held liable for its proportion of the whole amount of such taxes. Under these facts it appears that the apportionment rule was really enforced against Matledge, instead of being applied in his favor, as the plaintiff here is seeking to have done. In other words, the apportionment in that case was allowed as a defense, and not as anything asked or wanted by the plaintiff. Compare Stockwell *v.* Mutual Life Ins. Co., 140 Cal. 198 (73 Pac. 833, 98 Am. St. R. 25, 34). For other cases similar to though not identical with the *Matledge* case, see *Reynolds* v. *Wood,* 111 *Ga.* 854 (36 S. E. 593) ; *Harry L. Winter Inc.* v. *First National Bank of Quitman,* supra ; *Phoenix Mutual Life Ins. Co.* v. *Bank of Kestler,* 170 *Ga.* 734 (154 S. E. 247) ; *Federal Land Bank of Columbia* v. *DeLoach,* 172 *Ga.* 281 (157 S. E. 477) ; *Federal Land Bank of Columbia* v. *Farmers & Merchants Bank,* 177 *Ga.* 505 (170 S. E. 504) ; *Jackson* v. *John Hancock Mutual Life Ins. Co.,* 178 *Ga.* 438 (173 S. E. 143) ; all involving *transferred* tax executions.

In view of the facts and contentions dealt with in these decisions, none of them support the contention of this plaintiff that he is entitled as a matter of law, on the pleadings, to an equitable apportionment of the taxes here involved, much less to an affirmative recovery in his favor as against these defendants. For example, in *Federal Land Bank of Columbia* v. *DeLoach,* supra, it was *agreed* by the parties that the sole question for determination was whether the taxes should be apportioned, or the inverse-order rule applied. There are two decisions in which an apportionment was held proper on non-transferred executions. *Griffin* v. *Lane,* 177 *Ga.* 31 (169 S. E. 306) ; *Gans* v. *Griffin,* 180 *Ga.* 436 (179 S. E. 96).

Comment on these two decisions is reserved for the moment, but later in this opinion it will be shown that these cases are also distinguished by their facts from the present case. In the instant case the tax fi. fas. have not been transferred to the plaintiff, nor does the petition show that he has paid any sum for the benefit of either of the other creditors or for the purpose of discharging the tax lien against security held by them. The only issue actually submitted to the jury was whether the levy was excessive.. If there were other issues which ought to have been submitted, the plaintiff's remedy would have been a motion for a new trial, and not a motion for a judgment non obstante veredicto. Such a judgment can be rendered only when the pleadings taken as a whole demand a decree in favor of the plaintiff. 33 C. J. 1180, § 112; 15 R. C. L. 606, § 45; 11 Enc. Pl. & Pr. (1898) 914. The rule just stated refers, of course, to the state of the pleadings at the time the verdict was rendered. The plaintiff could not, after verdict, so amend his petition as to present for the first time a case demanding a decree in his favor, notwithstanding the verdict. The rule that amendments may be made at any stage of the cause does not contemplate amendment "after final termination of the trial." *Real Estate Bank & Trust Co.* v. *Baldwin Locomotive Works*, 145 *Ga.* 105 (88 S. E. 584); *Estill* v. *Estill*, 147 *Ga.* 358 (94 S. E. 304); *Land Development Corporation* v. *Union Trust Company of Maryland*, 180 *Ga.* 785 (5) (180 S. E. 836); *United States of America* v. *Hatcher*, 185 *Ga.* 816, 821 (196 S. E. 773); *Georgia Motor Sales Inc.* v. *Wade*, 37 *Ga. App.* 24 (138 S. E. 797). Whether or not, under the law of this State, an amendment could ever properly be allowed after verdict, we are satisfied that an amendment so allowed could not become the basis for a judgment non obstante veredicto. While the motion filed in the instant case was not presented as an amendment, the facts therein alleged were not for that reason of greater force as basis for such a judgment. Accordingly, except for some assumptions that may be made in the plaintiff's favor in the course of this opinion, we lay aside all of the allegations contained in his motion for a judgment, in so far as the facts stated therein did not already appear in the record without dispute.

Did the petition as amended and the answers of Penn Mutual Life Insurance Company and L. Snyder demand the decree here under review? We think not. As indicated above, the plaintiff

relies on the decision in *Brooks* v. *Matledge,* supra, and other decisions following it. He also invokes the general principle of contribution, stated in the Code, § 37-303, as follows: "In cases of joint, joint and several, or several liabilities of two or more persons, where all are equally bound to bear the common burden, and one has paid more than his share, he shall be entitled to contribution from the others; and whenever the circumstances are such that an action at law will not give a complete remedy, equity may entertain jurisdiction." As to the conditions upon which such relief may be granted, we are of the opinion that if the rule enunciated in the *Matledge* case would in any case authorize *affirmative* recovery, it would not do so without reference to the general principles of contribution as thus expressed in the Code. That such recovery must be based on these principles is clearly apparent from an examination of the law on the subject of contribution as applied to removal of incumbrances. 6 R. C. L. 1036, 1049, §§ 2, 12; 13 C. J. 822, 828, §§ 3, 17; 7 Am. & Eng. Enc. L. 326, 353. It seems to us that there are several reasons why, on the face of the petition, to say nothing of the answers, the plaintiff was not entitled to contribution as against the other creditors. In the first place, he has paid nothing for their benefit. He made some allegations to show that he had tendered to the county a sum of money which he contended was a ratable portion of the taxes for which the land which he held as security should be liable, together with interest and penalty; but this tender referred only to what the plaintiff contended was his share of the tax claim, and was not a removal of the incumbrance, or even an offer of removal, as related to the security held by the other creditors. Before one is entitled to contribution as an affirmative remedy, he must show not only a common liability, but payment by him of more than his share. In *Huey* v. *Stewart,* 69 *Ga.* 768 (3), it was held: "A mere recovery against complainant being alleged in the original bill, with no allegation of payment, he would not, on that ground, have the right to contribution from the representative of his co-administrator." In *Autry* v. *Southern Railway Co.,* 167 *Ga.* 136 (3) (144 S. E. 741), it was said: "In cases of joint, several, or joint and several liabilities of two or more persons, where all are equally bound to bear the common burden, and one has paid more than his share, then, and not until then, is he entitled to contribution from the

others." See also 13 C. J. 823, § 5. In 6 R. C. L. 1045, § 7, it is stated that "contribution can not be enforced on the ground merely that a liability exists, or even that a judgment has been recovered, but that there must have been either a payment of the demand, or such an assumption of it as imposes upon the claimant more than his share, and correspondingly releases the others."

But it is contended by this plaintiff that at the time of the judgment the tax sale had become complete by the lapse of more than twelve months from the payment by the county of the full amount of its bid, and that the plaintiff's property has thus gone to satisfy the entire amount of the taxes which constituted a lien applicable alike to all of the property held by these creditors as security. The completeness of the sale, however, did not appear from the original pleadings. On the contrary, the petition alleged in effect that the sale was *incomplete* for two reasons: (a) the county had paid no part of its bid, and (b) twelve months had not elapsed since the date of the sale. Compare *Newsom* v. *Dade County,* 180 *Ga.* 403 (179 S. E. 89) ; Code, § 92-8301. It is true that both in the answer of the county and in the plaintiff's motion for a decree, it appeared that the county had paid its bid in full some time after the suit was filed, and more than twelve months before the final decree was entered; but these pleadings can not be taken as evidence *against* the Penn Mutual Life Insurance Company and Snyder, for the purpose of sustaining a decree in the plaintiff's favor non obstante veredicto. Moreover, even if it had appeared from the pleadings before verdict that the sale was complete, the plaintiff was not authorized to pay the taxes upon any of this property for the benefit of the other creditors, although, of course, he could have purchased the tax executions and asserted rights thereunder. There was, however, no joint or common liability as between him and the other creditors, to be discharged by him in behalf of all. The first or primary liability rested upon Kaplan, the tax debtor, and there was no personal liability against any of these creditors. Code, §§ 92-110, 92-5708; *National Bank of Athens* v. *Danforth,* 80 *Ga.* 55 (7 S. E. 546). No one of them was bound to pay the taxes, but could have done so or refrained from doing so, as a matter of absolute choice or election. The petition does not disclose the amount of indebtedness to any one of them; and for aught that appears, both the Penn Mutual Life Insurance Com-

pany and Snyder might have preferred to lose their security rather than increase their investment by payment of the taxes. While payment might have been the wiser course, it was the exclusive right of these creditors to decide for themselves respectively as to their action in this regard. In Crawford v. Meis, 123 Iowa, 610 (99 N. W. 186, 66 L. R. A. 154, 158, 101 Am. St. R. 337), the following was held with reference to *remaindermen:* "They were not chargeable with the duty and responsibility of making payment of taxes. As between themselves, it can not be said that there were any reciprocal rights or duties. The duty of paying taxes rested upon the life-tenants; and should one of the remaindermen have seen fit to pay taxes allowed to become delinquent for the protection of the estate, he could not recover any portion of the amount so paid from his co-remaindermen. There being no duty to pay, there could be no such thing as an enforced contribution."

In 13 C. J. 823, § 6, it is stated: "To entitle one to contribution, the payment must be compulsory in the sense that the party paying was under legal obligation to pay." There is still another reason why the petition is deficient as failing to show the indispensable element of compulsory payment. The act of August 25, 1931 (Ga. L. 1931, p. 122), provides that any party having an interest in property returned or assessed with other property for taxation shall be allowed to pay the taxes assessed against any one or more pieces of the property in which he is so interested, and obtain a release as to such property. The plaintiff could have pursued this remedy before the sale, if he had chosen to do so. While in an amendment to his petition he alleged certain facts as reason for his failure to pursue his legal remedies, and it was held in the former decision by this court that the reason was sufficient as a matter of pleading, the amendment just referred to was allowed after the present defendants had filed their answers, and the amendment was not answered or required to be answered by them. *Hudson* v. *Hudson,* 119 *Ga.* 637 (2, 3) (46 S. E. 874); *Brown* v. *Atlanta, Birmingham & Atlantic Railroad Co.,* 131 *Ga.* 259 (62 S. E. 186). The amendments therefore required proof, and could not aid a decree rendered in the plaintiff's favor notwithstanding the verdict against him. *McElmurray* v. *Blodgett,* 120 *Ga.* 9, 15 (47 S. E. 531); *Miller* v. *Georgia Railroad Bank,* 120 *Ga.* 17 (3) (47 S. E. 525); *Watson* v. *Barnes,* 125 *Ga.* 733 (54 S. E. 723).

That proof in support of such amendments may have been introduced does not alter the case, since the question here is whether the pleadings themselves demanded the decree. In the circumstances, and especially in view of the act of 1931, it can not be said that any payment by the plaintiff of more than the sum ratably due on his security was made under compulsion, whether by a tax sale of the land so held by him as security, or otherwise. Under a similar statute, it was held by the Supreme Court of Colorado in Hallett v. Alexander, 50 Colo. 37 (114 Pac. 490, 34 L. R. A. (N. S.) 328, Ann. Cas. 1912B, 1277): "One who, having a mortgage lien on an undivided interest in real estate, redeems the whole tract from a tax sale, when by statute he might have redeemed only his interest in the property by paying his proportionate part of the tax, can not compel reimbursement by the owner of the other portion of the estate." In the opinion it was said that in view of the statutory provision, the party claiming contribution was not under "compulsion to pay the taxes or redeem the entire property from the sale for the nonpayment thereof, in order to protect his own interest. The payment of the taxes and the redemption from the sale thereof, as to the interest of [the party against whom contribution was sought], were voluntary acts upon his part. The doctrine contended for by plaintiff in error is not applicable. It only applies where there is an apparent necessity to make payments in order to protect one's own interest. The apparent necessity did not exist in this case." There was a dissenting opinion in that case, but it seems to us that the majority opinion expressed the better view. It was followed by the same court in Botkin v. Pyle, 91 Colo. 221 (14 Pac. (2d) 187).

When the instant petition as amended was considered on demurrer (184 Ga. 520, supra), the allegations were to be taken as true, and constituted the only criterion; but in passing upon the decree now under review, the pleadings of other parties must be considered. The plaintiff can not stand upon his own allegations without reference to admissions or lack of admissions in the pleadings of his adversaries. Under the record now to be considered, it does not appear but that the plaintiff had an adequate remedy by tendering the correct proportion of the taxes under the act of 1931, and filing a claim in pursuance of the Code, § 92-7801. Kirk v. Bray, 181 Ga. 814 (3), 826 (184 S. E. 733). Hence it does not

appear that he was *compelled* to do anything for the benefit of the other creditors. In *County of Bibb* v. *Mortgage Bond Co.*, 183 *Ga.* 402 (3) (188 S. E. 698), it was held: "No reason being alleged why the petitioner failed to pursue its legal remedy at the proper time, the petition failed to set forth a cause of action for the relief prayed for." Under the present record, that ruling is applicable, although it was distinguished in the former decision, wherein the allegations were to be taken as true in passing upon the demurrers. It should be remembered in this connection that the demurrers were filed by other defendants, and the question then for decision was the sufficiency of the petition as against the *demurrants*. The plaintiff would not be heard to say that any action taken by him was *compulsory* as related to the present defendants, merely because from ignorance of the facts he was unable to act before the tax sale, where the situation in which he found himself was in no way induced by these defendants. See, in this connection, 13 C. J. 828, § 17, note 92.

From what has been said, we think it is apparent, even on the assumption of a completed sale, that the pleadings did not demand the decree of contribution as rendered in the plaintiff's favor; but there is still more that may be said in support of this conclusion. The county in an amendment to its answer alleged that it was willing to yield to any interested party the right "to redeem said property from said tax sale within a reasonable time." Thus, so far as appears, the plaintiff can yet exercise the right of redemption with respect to this property. Compare *Union Central Life Ins. Co.* v. *Bank of Tignall*, 182 *Ga.* 233 (185 S. E. 108). The Code, § 92-8302 declares as follows: "When property has been redeemed, the effect thereof shall be to put the title conveyed by the tax sale back into the defendant in fi. fa., subject to all liens existing at the time of the tax sale; and if the redemption has been made by any creditor of the defendant or person having any interest in the property, the amount expended by such creditor or person interested shall constitute a first lien thereon and be repaid prior to claims upon the property, if the quitclaim deed hereinafter provided for is recorded as required by law." If the plaintiff should yet redeem the property by reimbursing the county for the entire amount of the purchase money paid by it, plus the prescribed premium, the amount so expended by the plaintiff would "constitute

a first lien thereon." The record is wholly silent as to the amount of the secured debt now held by the plaintiff against this property, and there is nothing to show that the property is insufficient to satisfy the debt as well as the amount required for such redemption. Thus, in any view of the case, it does not appear that the plaintiff has been *compelled* to pay any sum either in money or property for which the defendants or their security should be held liable. Notwithstanding the primary liability for the taxes rested upon Kaplan, the common debtor, and with respect to the defendants the lien for taxes related only to land held by them as security, involving as to them no liability in personam, yet the decree under review superimposed a personal liability and granted a personal judgment against each of them. If the plaintiff had otherwise established the right to contribution, an equitable apportionment in rem would have been the greatest relief which could lawfully have been granted to him. For the several reasons stated, it is our opinion that the decree rendered in the plaintiff's favor non obstante veredicto was contrary to law and to the principles of justice and equity, as contended by the defendants. See *Moor* v. *Interstate Mortgage Co.,* 176 *Ga.* 117 (167 S. E. 173) ; *Mayor &c. of Fort Valley* v. *Levin,* 183 *Ga.* 837 (190 S. E. 14).

The present case is distinguished by its facts from *Griffin* v. *Lane,* 177 *Ga.* 31 (supra). In that case the only relief sought by the plaintiff was, that the sale under the tax executions be enjoined; that the other defendants be required to pay their respective proportions of such executions; and that the plaintiff upon paying her share be relieved from further liability. The executions had never been transferred to or paid by the plaintiff; and hence the prayer that the defendants be required to pay their portions was not a prayer for payment to the plaintiff. Accordingly, she did not seek the recovery of any sum payable directly to herself, and what she mainly asked was that she, the plaintiff, "be relieved of liability" on paying "her share." In the instant case, however, the plaintiff sought and obtained an affirmative recovery in his own behalf. A further and important difference between that case and the one now under consideration is that all of the taxes there involved accrued before the passage of the act of August 25, 1931; and while the petition in that case was filed a few days after the passage of that act, its provisions were not invoked by the defendants, who

were the plaintiffs in error, and it was not referred to or considered in the decision.  If this statute was applicable to taxes previously accruing (cf. *Morris* v. *Interstate Bond Co.*, 180 *Ga.* 689, 180 S. E. 819, 100 A. L. R. 415), and if it had been considered, the decision would necessarily have been different, because the plaintiff's situation would not have been a compulsory one.  So in any view of that case it is not more than a physical precedent as related to the act of 1931. The case of *Gans* v. *Griffin*, 180 *Ga.* 436 (supra) is quite similar to *Griffin* v. *Lane*, supra, and has all of the distinguishing features just noted in regard to that case.  Furthermore, the petitions in the *Gans* case were all filed before the passage of the act of 1931.  Whether or not there may be still other points of difference, it is apparent from what has been said that the rulings made in those cases do not apply in the present case.  Nor is a different result required here by the former decision in this case.  It was then held, in effect, that since the petition alleged sufficient facts to avoid the sale on the ground of excessive levy, the petitioner would be entitled to an apportionment of the taxes; but this was not a ruling as to what would be the result if the levy was *not* excessive.  The jury settled the issue of excessive levy against the plaintiff; and so there is nothing in the former decision that may be taken as establishing the law of the case in his favor on the question of contribution.  It might be stated further that the former decision did not purport to rule that the apportionment, if allowed under any circumstances, should include recovery directly by the plaintiff of a money judgment, whether in rem or in personam, as against these defendants.

On the facts of the record, the judgment can not be sustained as a proper exercise of the power to mold decrees.  Code, § 37-1203; *McDaniel* v. *Mitchell*, 95 *Ga.* 40 (2)  (21 S. E. 993); *Austin* v. *Southern Home Building & Loan Association*, 122 *Ga.* 439 (8) (50 S. E. 382); *Davis* v. *Flowers*, 154 *Ga.* 260 (114 S. E. 200). Counsel for the plaintiff in error insist that it is not essential to the validity of this judgment that it should have been demanded by the pleadings; citing, for this contention, *Mayor &c. of Macon* v. *Harris*, 75 *Ga.* 761 (1, 10); *Law* v. *Coleman*, 173 *Ga.* 68 (159 S. E. 679).  As indicated above, we entertain a different view of the law; and we do not regard these two decisions as holding anything to the contrary.  In neither of them was the court dealing

**178**

with a judgment rendered in a party's favor notwithstanding a verdict against him. Nothing said in this opinion is to be taken as holding that such a judgment could properly be granted in any case under the practice in this State; this being merely assumed for the purposes of the present case. See dissenting opinion by Mr. Justice Cobb in *Crew* v. *Hutcheson,* 115 *Ga.* 511, 532 (42 S. E. 16).

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*